Hugh W. SHUMAKER, Plaintiff-Appellee,

v.

GEM MANUFACTURING CO.,
Defendant-Appellant.

No. 13706.

United States Court of Appeals
Seventh Circuit.

Dec. 20, 1962.

James P. Hume, Chicago, Ill., Russell H. Clark, Edwin H. Halligan, Chicago, Ill., for appellant.

Francis A. Utecht, Long Beach, Cal., Benjamin F. Berry, Seattle, Wash., Max Richard Kraus, Chicago, Ill., for appellee.

Before SCHNACKENBERG, KNOCH and KILEY, Circuit Judges.

KNOCH, Circuit Judge.

Plaintiff, Hugh W. Shumaker, brought this action against defendant, Gem Manufacturing Co., charging infringement of plaintiff's patent No. 2,933,344, granted April 19, 1960.

The patent is directed to a pair of wind deflectors attached to the rear corner posts of a station wagon to break up the vacuum formed during forward movement of the vehicle. The vacuum created at the blunt end during forward movement of a station wagon draws road dust, dirt, grime, snow and other foreign material onto the rear window, obscuring rear vision and creating a driving hazard.

The District Court found the patent to be valid; held that claims 1 and 2 thereof [1] were wilfully and wantonly infringed

---

1. **1.** In combination with a vehicle of the type having a closed body and being provided with a rear section which is substantially flat and generally vertical and having in the upper region thereof a generally upright and substantially flat window extending between rear corner posts of the vehicle body, whereby the vehicle while in motion tends to produce a vacuum in the region of the rear section thereof such as to cause dust and road dirt to be delivered against the rear window glass, a wind deflector disposed in outwardly spaced relationship with respect to each such corner post, each deflector being of a vertical height substantially the

by defendant; and granted permanent injunction and accounting for costs. Defendant appealed.

The defendant lists the contested issues as follows:

1. The Shumaker patent No. 2,-933,344 here in suit is invalid as to claims 1 and 2 for lack of invention and for anticipation over the prior art.

2. The patent here in suit as to claims 1 and 2 is invalid because Shumaker did not exercise that degree of inventive skill necessary to comply with the requirements of Section 103, Title 35, U.S.Code, which relates to conditions for patentability.

3. The defendant has not directly infringed claims 1 and 2 of the patent here in suit by manufacturing and selling wind deflectors as exemplied in Plaintiff's Ex. 32 and 39.

4. The defendant is not liable as a contributory infringer under 35 U.S.Code Section 271(c) [2] because the wind deflectors which it manufactures and sells are staple articles of commerce and said wind deflectors can be applied to the roofs of cars, to the hood of autos and to boats, all substantial non-infringing uses.

Defendant contends that wind deflectors and air directors are not new and form the subject of a number of prior art patents. However, the problem was an old and long existing one. Plaintiff testified that he became aware of it while driving a station wagon on a rural mail delivery route during the summer of 1956. He then conceived the idea of eliminating the vacuum by directing the slip stream of air inwardly across the rear window area. He constructed and tested deflectors to secure an inexpensively manufactured, attractive, easily adjustible device, adaptable to all conventional models, which would allow the tailgate to be opened without striking the wind deflector assembly. He also found that the deflectors kept exhaust gases and road dust from entering the vehicle if the rear window were kept open. He began selling his device in 1958, and, alone, lacking substantial merchandising experience, with a limited operating budget, relying on mail orders from advertisements in rural magazines, and his own personal visits to service stations and garages, he achieved a sales volume of about $57,000 between March 1958 and July 1960.

---

same as the vertical height of the rear window, means secured to each corner post articulately mounting a respective wind deflector therefrom, said means including a link extending between a respective corner post and deflector and being pivotally secured at its opposite ends to these members whereby each deflector is positionable to project laterally and forwardly from the rear window into the slip stream of air at its corresponding side of the vehicle body, each deflector being in the form of an elongate strip of material of generally rectangular form and being arcuated in cross section so that whereas the forward edge of each such deflector is disposed within the slip stream, the rear edge thereof is positioned to direct deflected air streams across the back surface of the window to obviate the vacuum effect of the vehicle body.

2. The assembly as defined in and by claim 1 wherein said means also includes a first strap member fixed to a respective deflector and having a pair of outstanding ears rigid therewith and disposed in vertically spaced relationship to each other, a second strap member fixed to a respective corner post and having a pair of outstanding ears rigid therewith disposed in vertically spaced relationship, said link being pivotally attached at its opposite ends to one ear of each said pair of ears, and there being a second link pivotally connected at its opposite ends to the other ears of said pairs of ears.

2. Whoever sells a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

After July 1, 1960, when he entered into an exclusive licensing agreement with Superior Industries, Inc., of North Hollywood, California, he discontinued selling his devices. Louis Borick, an employee of Superior Industries, testified that his company, from about June 1959 to December 1961, had a gross sales volume of about $450,000.

David L. Gass, an employee of defendant, testified, as an adverse witness for plaintiff, that in October or November 1959, a customer had brought in a wind deflector which Mr. Gass later found to be identical to deflectors manufactured and sold by plaintiff's exclusive licensee, Superior Industries. He immediately started developing the accused device, completed tools and dies, and had pieces for sale in January 1960. Defendant continued from that date to manufacture and sell its deflectors in competition with those of plaintiff's licensee.

Although he found that the vanes of defendant's deflectors were provided with non-functional vertical embossing and their brackets utilized Phillips-head screws rather than straight slotted screws, the District Judge found the defendant's device substantially identical with those sold by plaintiff and by plaintiff's licensee, the vanes and brackets being interchangeable.

Defendant advertised its product through a catalog sheet containing a picture of the rear of a station wagon with wind deflectors mounted on its rear corner posts. The catalog sheet stated that these deflectors broke the vacuum, thus keeping the rear window clear, and kept exhaust gases and road dust out if the rear window were open. Defendant's cartons bore a substantially similar picture and description, and contained instructions for installing the deflectors in an adjustable manner on the rear corner posts of a station wagon.

In April 1960, plaintiff served notice of infringement on defendant. Defendant then brought out a new catalog sheet in which deflectors were shown on an automobile hood, on a boat windshield, and singly on the roof, as well as in pairs at the rear, of a station wagon. The carton cover was similarly changed, and the instruction sheet referred to the varied pictured uses. But the instructions themselves dealt only with mounting the deflectors in pairs on the rear corner posts of a station wagon. Later a third instruction sheet added a statement that comparable installation could be made "for cars and boats."

Mr. Gass testified to seeing one deflector on the roof of a station wagon and one pair on a boat.

There is no question that if installed on the rear posts of a station wagon pursuant to the instructions contained in the carton, defendant's wind deflectors constitute a direct infringement of claims 1 and 2 of the patent in suit.

Of the prior art introduced by defendant, only three patents disclosed means for breaking the vacuum behind a moving vehicle: Chalkley 1,584,275, May 11, 1926; Stalker, 1,871,396, August 9, 1932; Ishiwata, 2,199,883, May 7, 1940. We have examined these patents and are constrained to agree with the analysis of the District Court that none presents a practical solution of the problem. On the contrary, it appears that Chalkley and Stalker would require extensive modification of the vehicles to which they are attached. Ishiwata, on which defendant particularly relies, might well result in obscuring the view through the rear window. All three were included among the patents cited by the Patent Examiner, a fact which strengthens the presumption of patent validity. Amp, Inc. v. Vaco Products Co., 7 Cir., 1960, 280 F.2d 518, 521; Copeman Laboratories Co. v. General Plastics Corp., 7 Cir., 1945, 149 F.2d 962, 964; Ekstrom-Carlson & Co. v. Onsrud Machine Works, Inc., 7 Cir., 1962, 298 F.2d 765, 768.

It is true, as defendant argues, that development of a vacuum at the flat-ended rear of a forward moving vehicle is a well known physical phenomenon. But the need for a device such as plaintiff's

existed for a long time prior to his discovery of a solution. The apparent simplicity of the invention here involved gives it a false appearance of obviousness only now after the event, in the light of the patent's own teaching. The District Court's finding of patent validity is bolstered by the immediate commercial success of the device and by defendant's own prompt adoption of it.

■ As defendant asks, we have considered the prior art respecting the brackets, but we do not see disclosed brackets which would fulfill the need of maintaining the vanes in an adjustable position relative to the supporting member. We must agree with the District Judge's findings that none of the prior art anticipates or negatives invention in the patent in suit.

The District Court found that defendant has contributorily infringed claims 1 and 2 of the patent in suit by inducing others to purchase defendant's deflectors with the intent that they be installed on the rear corner posts of a station wagon in an infringing manner. As noted above, the drawings and instructions accompanying the defendant's device are clearly directed to this end.

"Whoever actively induces infringement of a patent shall be liable as an infringer." Title 35 U.S.Code § 271(b).

Defendant contends that it is selling a staple article of commerce suitable for substantial non-infringing use, and that some of these non-infringing uses are indicated in the revised instruction and catalog sheets issued after the filing of this suit; that defendant sells to wholesalers who in turn sell to the public and that defendant has no way of knowing what ultimate infringing, or non-infringing, use the final consumer will make of defendant's product.

However, the defendant, for example, sells these deflectors in sets of two. It is unlikely that a purchaser seeking a single deflector for non-infringing use on the roof of an automobile will buy the device in pairs. As defendant asserts, plaintiff's licensee sells a wind *deflector* for use singly on the roof of an automobile in a carton which does not bear any patent number. That deflector, however, is longer that those of defendant's; it does not fall within the scope of claims 1 and 2, not "being of a vertical height substantially the same as the vertical height of the rear window," and is boxed and sold singly.

Even after notice of infringement and after institution of this suit, defendant continued to sell its product in pairs, with carton and catalog illustrations of their installation on the rear posts of a station wagon in an infringing manner. The instructions, even as revised, continued to describe in detail a 9-step method for mounting the deflectors on the rear posts of a station wagon in an infringing manner. At the foot of the instruction sheet, defendant merely says:

*"For Cars & Boats*

"Installation is entirely comparable to the above, except that when using Wind Deflectors as a 'scoop', brackets are attached to the adhesive coated convex side."

■ Defendant complains that the injunction is overly broad. We understand the injunction entered herein to be limited strictly to the infringing activity of selling the defendant's deflectors in pairs for installation on the rear posts of a station wagon in an infringing manner. The injunction is not directed to sale of the deflectors singly for use on the roof or in pairs for use on the hood of an automobile or on the windshield of a boat. However, the defendant may not with impunity continue the practice of picturing the infringing use on its cartons, in its catalogs, and in its instruction sheets, or of selling its product with directions for mounting it in an infringing manner. Under these circumstances defendant cannot reasonably be heard to contend that it is selling its product for a non-infringing use and that the ultimate purchaser, by his own ingenuity alone, has

devised an infringing use for which the defendant is not responsible.

The judgment of the District Court, subject to the above comments as to the scope of the injunction, is affirmed.