**Milton HODOSH and Richardson–Vicks, Inc., Plaintiffs–Appellees,**

v.

**BLOCK DRUG COMPANY, INC., Block Drug Corp., and Dentco, Inc., Defendants–Appellants.**

No. 87–1376.

United States Court of Appeals, Federal Circuit.

Nov. 25, 1987.

Marvin C. Soffen, Ostrolenk, Faber, Gerb & Soffen, New York City, argued for defendants-appellants, Block. With him on the brief were Edward A. Meilman and

Mark Garscia. Also on the brief were James F. Davis and Alan M. Grimaldi, Howery & Simon, Washington, D.C.

John O. Tramontine, Fish & Neave, New York City, argued for plaintiffs-appellees. With him on the brief were W. Edward Bailey and Norman H. Beamer. Also on the brief were Hugh A. Chapin, Paul Lempel and William J. McNichol, Jr., Kenyon & Kenyon, New York City.

Before MARKEY, Chief Judge, DAVIS, Circuit Judge, and BALDWIN, Senior Circuit Judge.

MARKEY, Chief Judge.

Certified question from the United States District Court for the District of New Jersey relating to a "staple article of commerce" inquiry arising in consideration of a motion for summary judgment of patent misuse.

## I. *Background*

Milton Hodosh and exclusive licensee Richardson–Vicks (Hodosh) sued Block Drug Company, Inc., Block Drug Corp., and Dentco, Inc. (Block) for patent infringement, contributory infringement, and induced infringement of Hodosh's U.S. Patent No. 3,863,006 ('006), entitled "Method for Desensitizing Teeth." Block filed motions for summary judgment of patent invalidity and misuse. The trial court granted the motion for summary judgment of invalidity. This court reversed that judgment. *Hodosh v. Block Drug Co.*, 786 F.2d 1136, 229 USPQ 182 (Fed.Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 106, 93 L.Ed. 2d 55 (1986). Block renewed its motion for summary judgment of patent misuse.

When the court decided that motion, Block asserted that the motion involved a controlling question of law as to which there is a substantial ground for difference of opinion. The district court certified the question and this court granted Block's petition for interlocutory appeal. 28 U.S.C. § 1292(b), (c) (1966 & Supp.1987).

The '006 patent discloses and claims a method for desensitizing teeth with a composition containing an alkali metal nitrate.[1] Hodosh's product claims were twice rejected and abandoned. Independent claim 1 reads:

> The method of desensitizing hypersensitive dentin and cementum by applying thereto an agent, the essential ingredient of which is a nitrate of one of the following alkali metals: potassium, lithium or sodium said nitrate comprising between 1 percent and 20 percent by weight of said agent.

Claim 4, of particular importance here, reads:

> The method of claim 1 further characterized in that said nitrate is potassium nitrate mixed with a nontoxic paste.

Hodosh sells "DENQUEL,"[2] a toothpaste containing potassium nitrate, thereby granting implied licenses to practice the patented method to purchasers of that product. Block requested and was denied a license under the patent.

Block asserts that Hodosh misuses the '006 patent by "tying" a license to use the Hodosh method to the purchase of "unpatented toothpaste."[3] Block does not allege that Hodosh has attempted to control the sale of potassium nitrate *per se*. There is no dispute that purchasers of Block's toothpastes "PROMISE" or "SENSO-

---

**1.** A complete discussion of the facts can be found in the district court's opinion on summary judgment of invalidity, 226 USPQ 645, 645–48, and in this court's opinion reversing that summary judgment, 786 F.2d at 1137–38, 229 USPQ at 182–83.

**2.** "Denquel" is a registered trademark, Registration No. 1154376.

**3.** Hodosh sells the mixture of potassium nitrate and nontoxic paste, with the nitrate comprising between 1 percent and 20 percent of the paste, set forth in claim 4, *supra*. Each purchaser of that product receives an implied license to apply it to hypersensitive dentin and cementum for the purpose of desensitizing them.

DYNE–F"[4] directly infringe the '006 patent when they use either of those toothpastes to desensitize teeth.[5]

As noted in the district court's Letter Opinion and Order, the question comes on the focus of the staple/nonstaple inquiry. Hodosh admits that potassium nitrate is a staple, but argues that the relevant material is that which it sells, i.e., the toothpaste. Though it asserts misuse in relation to "unpatented toothpaste," Block argues that the relevant material is that which constitutes the material part of the invention, or the alleged advance over the prior art, i.e., the single ingredient potassium nitrate.[6]

## II. *Issue*

Whether the proper focus in determining the misuse issue should be on the potassium nitrate [an ingredient of the material that is actually sold], or on the toothpaste containing the potassium nitrate [the material that is actually sold].[7]

## III. OPINION

### A. *The Patentee's Actions*

One form of contributory infringement is defined in 35 U.S.C. § 271(c) as:

Whoever sells ... a material ... for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in the infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing

use, shall be liable as a contributory infringer.

35 U.S.C. § 271(d) provides that certain acts shall not constitute patent misuse:

No patent owner otherwise entitled to relief for infringement or contributory infringement shall be denied relief or be deemed guilty of misuse or illegal extension of the patent right by reason of his having done one or more of the following: (1) derived revenue from acts which if performed by another without his consent would constitute contributory infringement of the patent; (2) licensed or authorized another to perform acts which if performed by another without his consent would constitute contributory infringement of the patent; (3) sought to enforce his patent rights against infringement or contributory infringement.

The contributory infringement and misuse inquiries, though obviously intertwined, require analysis of the actions of different entities. In considering a plaintiff's claim of contributory infringement under § 271(c), a court must review the defendant's acts. *See Shumaker v. Gem Mfg. Co.,* 311 F.2d 273, 276, 136 USPQ 20, 22 (7th Cir.1962); *Watson Packer, Inc. v. Dresser Indus., Inc.,* 193 USPQ 552, 561 (N.D.Tex.1977). In considering a defense of patent misuse, a court must review the plaintiff's actions in light of § 271(d). In dealing with misuse here, analysis of Hodosh's actions is required.

The misuse inquiry thus centers on the patentee and his actions. To determine whether exception (1) or (2) of § 271(d)

---

4. "Promise" and "Sensodyne–F" are registered trademarks, Registration Nos. 1212077 and 1280417.

5. The district court considered only contributory infringement. Hodosh's claims for infringement and induced infringement are, therefore, not before us.

6. Hodosh's argument that summary judgment of misuse would be inappropriate because Block has not established the other elements of patent misuse, cannot be raised here because it was not raised in the district court. *See* Fed.R.Civ.P.

56(e); *Senza–Gel Corp. v. Seiffhart,* 803 F.2d 661, 668, 231 USPQ 363, 368 (Fed.Cir.1986). Similarly, Hodosh's presentation of its extensive product development and marketing evidence is premature. The sole inquiry here is whether the district court, in denying Block's summary judgment motion, correctly focused on the material Hodosh actually sells.

7. The issue is the question as certified, with the bracketed wording added by this court in its Order granting permission to appeal.

applies, however, the patentee's action is judged on whether "if performed by another without his consent [that action] would constitute contributory infringement." Hodosh's action at issue here is its derivation of revenue from sales of nontoxic paste containing potassium nitrate for use in desensitizing teeth.[8]

### B. *The Certified Question*

Though the certified question arises in the context of a motion for summary judgment of misuse, the question, as above indicated, implicates considerations of contributory infringement, and requires an answer to the staple/nonstaple inquiry.

■ In determining whether Hodosh's actions "if performed by another" would constitute contributory infringement, the district court, says Block, should have focused on the admittedly staple potassium nitrate ingredient alone. That argument is refuted by the language of § 271(c), which deals with the material actually sold by the accused and the uses made of it by its purchasers. Section 271(c) requires examination of the patented method only in determining whether the material the accused actually sells constitutes a material part of the invention and is known by the accused to be especially made or adapted for use in infringing the patent.[9] Neither party here "sells" potassium nitrate, and Block's attempted limitation of the staple/nonstaple inquiry to that mere ingredient would eliminate the § 271(c)—mandated inquiries relating to whether what was actually sold was a material part of the invention and whether the seller knew that what was actually sold was especially made or adapted for use in infringement of the patent.

The legislative history of § 271(c) is in complete agreement with reliance on the plain wording of the statute. In his Commentary on the New [1952] Patent Act, 35 U.S.C.A. at 53 (1952), P.J. Federico, one of the Act's principal authors, emphasizes that the focus of § 271(c) is on "the thing sold," and in referring to exclusion of staple products says: "[i]n addition *the thing sold* must not be 'a staple article or commodity of commerce suitable for substantial noninfringing use.'" *Id.* (emphasis added).[10] The drafters of the section explicitly recognized that without protection from contributory infringers, owners of method patents, like the owner here, would have no effective protection.[11] *Hearings on H.R. 5988 Before the Subcomm. on Patents, Trademarks, and Copyrights of the House Comm. on the Judiciary,* 80th Cong., 2d Sess. 4, 5, 18 (1948); *see Dawson Chem. Co. v. Rohm & Haas,* 448 U.S. 176, 221–23, 100 S.Ct. 2601, 2625–26, 65 L.Ed.2d 696, 206 USPQ 385, 407–08 (1980).

### C. *Block's Arguments*

Block would have this court conclude that, for § 271 purposes, excluding others from selling toothpaste with potassium nitrate in it is not different from excluding others from selling either potassium nitrate

---

8. Block does not assert that Hodosh committed a misuse when it "sought to enforce his patent rights against infringement .or contributory infringement." § 271(d)(3).

9. Comparison of the patent claims to the actions of the purchaser is involved in determining direct infringement, a prerequisite to contributory infringement. As noted, *supra,* there is no dispute here that purchasers using Block's toothpastes to desensitize their teeth directly infringe the '006 patent.

10. *See also Hearings on H.R. 3760 Before Subcomm. No. 3 of the House Comm. on the Judiciary,* 82nd Cong., 1st Sess. 154–55 (1955) (testimony Mr. (now Judge) Giles S. Rich, a principal author of the section, discussing how it would

apply to the situation in *Amalgamated Dental Co. v. William Getz Corp.,* 90 USPQ 339 (N.D.Ill. 1951)).

11. At oral argument, counsel for Block answered the question, "How would you if you owned this patent enforce it?", saying Block would sue all the individual consumers practicing the patented invention. The impracticality and undesirability of that approach underlies Congress' provision of the contributory infringement remedy in § 271(c) and (d). For a full explanation thereof, see Rich, *Infringement Under Section 271 of the Patent Act of 1952,* 21 Geo.Wash.L. Rev. 521 (1953).

or pure toothpaste alone. We cannot accept that proposal, for the combination may be quite different from either ingredient alone and there are fact questions that at this summary judgment stage must be resolved against the movant Block. At trial, for example, the toothpaste containing potassium nitrate may be shown to have been especially made and sold for infringing use, and to have a far narrower range of noninfringing uses (if any) than that of potassium nitrate or pure toothpaste alone.[12]

Block's principal reliance is on *Dawson, supra.* That reliance is misplaced. The Court in *Dawson* concluded that the provisions of § 271(d) confer upon the patentee a limited power to exclude others from competition in nonstaple goods. "A patentee may sell [or license another to sell] a nonstaple article ... while enjoining others from marketing that same good without his authorization." 448 U.S. at 201, 100 S.Ct. at 2616, 206 USPQ at 399. Because Dawson had admitted that it sold a nonstaple article having no substantial noninfringing uses, the Court affirmed the appellate court's conclusion that Rohm & Haas had not engaged in patent misuse, either in its method of selling propanil, or in its refusal to license others to sell that commodity. *Id.* at 185–86, 202, 213–14, 100 S.Ct. at 2621–22, 206 USPQ at 392, 399, 404.

Contrary to Block's protestations, the Court in *Dawson* did not address any question of whether courts, when making the staple/nonstaple determination, should look to the product actually sold or to a mere ingredient in that product. Similarly, Block's argument that the court in *Dawson* looked to the "essence" or "essential" of the claimed invention when it referred to "propanil" instead of "propanil mixed with an inert diluent" is unfounded. Both parties sold the same product and Dawson conceded that the product actually sold was a nonstaple article. Hence, the Court had no need to, and did not answer the question here certified.

Unable to make the charge directly, Block implies by its argument that Hodosh has somehow attempted to control the sale of potassium nitrate, and refuses to entertain even the possibility that Hodosh may be merely attempting to stop contributory infringement of its patent. Similarly, Block's attack on the grant of a license to one manufacturer and the licenses implied by law to purchasers carries an unstated but implied and inappropriate demand for a compulsory license.

Block's quoted phrases from numerous court opinions [13] are unpersuasive on this appeal. In most of those cases, the materials actually sold were themselves found to be staples. In others, the court spoke before the advent of § 271. In still others,

12. Because they are fact questions for trial on remand, we do not decide those questions here. Nor do we express an opinion on whether toothpaste containing potassium nitrate is a "material part of the invention" or is a "staple article or commodity of commerce suitable for substantial noninfringing use," or on whether Block sells its toothpaste with knowledge that it is "especially made or especially adapted for use in the infringement of such patent." Similarly, Block's speculation that its toothpaste might have "substantial" noninfringing use on teeth that do not need desensitizing raises a fact question having no place in this appeal.

13. *Rex Chainbelt, Inc. v. Harco Prods., Inc.,* 512 F.2d 993, 185 USPQ 10 (9th Cir.), *cert. denied,* 423 U.S. 831, 96 S.Ct. 52, 46 L.Ed.2d 49 (1975); *Dr. Salsbury's Labs v. I.D. Russell Co. Labs,* 212 F.2d 414, 101 USPQ 137 (8th Cir.1954) (*Salsbury II*); *I.D. Russell Co. Labs v. Dr. Salsbury's Labs,* 198 F.2d 473, 94 USPQ 199, (8th Cir.1952) (*Salsbury I*); *Oxy Metal Indus. Corp. v. Quintec, Inc.,* 216 USPQ 318 (E.D.Mich.1982); *Sony Corp. v. Universal City Studios, Inc.,* 464 U.S. 417, 104 S.Ct. 774, 78 L.Ed.2d 574, 220 USPQ 665 (1984); *Deepsouth Packing Co. v. Laitram Corp.,* 406 U.S. 518, 92 S.Ct. 1700, 32 L.Ed.2d 273, 173 USPQ 769 (1972); *Mercoid Corp. v. Mid-Continent Inv. Co.,* 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376, 60 USPQ 21 (1944) (*Mercoid I*); *Mercoid Corp. v. Minneapolis–Honeywell Regulator Co.,* 320 U.S. 680, 64 S.Ct. 278, 88 L.Ed. 396, 60 USPQ 30 (1944) (*Mercoid II*); *B.B. Chem. Co. v. Ellis,* 314 U.S. 495, 62 S.Ct. 406, 86 L.Ed. 367, 52 USPQ 33 (1942); *Morton Salt Co. v. G.S. Suppiger Co.,* 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363, 52 USPQ 30 (1942); *Leitch Mfg. Co. v. Barber Co.,* 302 U.S. 458, 58 S.Ct. 288, 82 L.Ed. 371, 36 USPQ 35 (1938); *Carbice Corp. v. American Patents Dev. Corp.,* 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819, 8 USPQ 211 (1931); *Motion Picture Patents Co. v. Universal Film Mfg. Co.,* 243 U.S. 502, 37 S.Ct. 416, 61 L.Ed. 871 (1917).

the material actually sold was found after trial to have had many noninfringing uses. None involved the precise circumstances before us and in none did the court indicate that under the circumstances of this case a court may answer the staple/nonstaple question by focusing exclusively on an ingredient of the material actually sold. In any event, if any of Block's quoted phrases were readable as establishing as a rule of law that courts must focus only on a mere ingredient (rather than on the material or product actually sold), such a rule would be in conflict with the statute and could not, therefore, be followed in this court.

### IV. CONCLUSION

The answer to the certified question is that in determining the misuse issue presented in this case the proper focus is on Hodosh's effort to control the toothpaste containing potassium nitrate actually sold and not on the potassium nitrate ingredient alone.