GAJARSA, Circuit Judge,
dissenting as to Section III.B.
I agree with my colleagues with respect to the result and judgment reached, but I must dissent as to that portion of the opinion 'and judgment at Section III.B. Specifically, I disagree with my colleagues’ decision to decide the difficult issue of contributory infringement on the basis of policy concerns without due regard for the text of 35 U.S.C. § 271(c) and am of the opinion that the majority makes three errors in its analysis. First, the majority ignores the fact that Quanta does not sell or offer to sell the accused components, as the term “sell” is used in § 271(c). Second, the majority opts for an over-inclusive application of § 271(c) that directly contravenes Supreme Court guidance on how this section ought to be interpreted. Third, the conduct to which the majority objects relates to the design and manufacture of “components,” even though § 271(c) only addresses the act of selling a component. For each of these reasons, I dissent from the majority opinion as to Section III.B; summary judgment of no contributory infringement was proper in this case.
First, § 271(c) imposes contributory infringement liability on “[wjhoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention_”35 U.S.C. § 271(c). In this case, the asserted claims of the '552 and '755 patents are directed to methods of writing data to optical discs. The district court reasoned that the accused devices, in addition to writing data to optical discs, were also capable of reading data from optical discs, and the court concluded that the accused devices were therefore suitable for a substantial noninfringing use. Ricoh Co. v. Quanta Computer, Inc., 579 F.Supp.2d 1110, 1115-16 (W.D.Wis.2007) (“Summa'i’y Judgment Order”). Accordingly, the court ruled that Quanta *1345 did not contributorily infringe the '552 and '755 patents. Id. On appeal, Ricoh asserts that because the reading function is wholly separable from the writing function of the accused drives — i.e., Quanta could have sold read-only drives or drives lacking the features accused of infringing the patents[1] —Quanta cannot avoid liability for contributory infringement simply by putting those functions together in the same box. But irrespective of whether the hardware and software components of Quanta’s drives identified by Ricoh constitute a separable component or a material or apparatus for use in practicing Ricoh’s method claims, it is undisputed that Quanta has neither offered for sale nor sold these components as the term “sale” has been interpreted by this court.
The unmistakable holding of Hodosh v. Block Drug Co., Inc., 833 F.2d 1575 (Fed.Cir.1987), is that “offers to sell or sells” in § 271(c) refers to “the material the accused actually sells.” Id. at 1578. In Ho-dosh, the question was whether the sale of unpatented toothpaste, which was used by consumers to practice a patented method, would constitute contributory infringement under § 271(c) if the sales were made by a party other than the patentee. One party argued that such a sale would not constitute contributory infringement because the toothpaste contained the staple article potassium nitrate. In rejecting this argument, the court did not hold, as the majority here suggests, “that an otherwise infringing product may automatically escape liability merely because it contains a non-infiinging staple ingredient.” Rather, the court focused on the language of the statute and held that
the language of § 271(c) ... deals with the material actually sold by the accused and the uses made of it by its purchasers. Section 271(c) requires examination of the patented method only in determining whether the material the accused actually sells constitutes a material part of the invention and is known by the accused to be especially made or adapted for use in infringing the patent. Neither party here “sells” potassium nitrate, and Block’s attempted limitation of the staple/nonstaple inquiry to that mere ingredient would eliminate the § 271(c)-mandated inquiries relating to whether what was actually sold was a material part of the invention and whether the seller knew that what was actually sold was especially made or adapted for use in infringement of the patent.
Hodosh, 833 F.2d at 1578 (footnote omitted) (emphasis added). In the present case, neither party “sells” components adapted to perform Ricoh’s patented write methods. They sell optical disc drives capable of reading discs, writing in a nonin-fringing manner, and writing in an allegedly infringing manner. The majority’s attempted limitation of the staple/nonsta-ple inquiry to one mere component of the optical disc drives sold by Quanta (1) requires an inappropriate factual finding, as neither did the district court find nor does the record presented to us on appeal demonstrate that Quanta’s optical disc drives include a wholly separable infringing component; and (2) would eliminate the § 271(c)-mandated inquiry relating to whether what was actually sold was suitable for a substantial noninfringing use.
*1346 Second, the majority’s interpretation of § 271(c) subjugates the public interest in access to unpatented devices to a paten-tee’s interest in realizing economic reward from a patented method. In Sony Corporation of America v. Universal City Studios, Inc., 464 U.S. 417, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984), the Supreme Court reasoned that “when a charge of contributory infringement is predicated entirely on the sale of an article of commerce that is used by the purchaser to infringe a patent, the public interest in access to that article of commerce is necessarily implicated.” Id. at 440, 104 S.Ct. 774. As to the balance of that public interest against the private right of a patent owner, “ ‘the patent statute[ ] makes reward to the owner a secondary consideration.’ ” Id. at 429 (quoting United States v. Paramount Pictures, 334 U.S. 131, 158, 68 S.Ct. 915, 92 L.Ed. 1260 (1948)). Thus, to strike the appropriate balance, the Court has stated that the “ ‘sale of an article which though adapted to an infringing use is also adapted to. other and lawful uses, is not enough to make the seller a contributory infringer,’ ” reasoning that “ ‘[sjuch a rule would block the wheels of commerce.’ ” Sony, 464 U.S. at 441-42, 104 S.Ct. 774 (quoting Henry v. A.B. Dick Co., 224 U.S. 1, 48, 32 S.Ct. 364, 56 L.Ed. 645 (1912), overruled on other grounds, Motion Picture Patents Co. v. Universal Film Mfg., 243 U.S. 502, 517, 37 S.Ct. 416, 61 L.Ed. 871 (1917)).
Moreover, in Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 545 U.S. 913, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005), although a copyright case, the Supreme Court explicitly stated that the purpose of the contributory infringement doctrine was to presume an intent that a product be used to infringe another’s patent. Id. at 932, 125 S.Ct. 2764 (“The doctrine was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another’s patent, and so may justly be held liable for that infringement.”). Accordingly, “where an article is ‘good for nothing else’ but infringement, there is no legitimate public interest in its unlicensed availability, and there is no injustice in presuming or imputing an intent to infringe.” Id. (citation omitted) (quoting Canda v. Mich. Malleable Iron Co., 124 F. 486, 489 (6th Cir.1903)). As ensconced in § 271(c), the doctrine of contributory infringement “absolves the equivocal conduct of selling an item with substantial lawful as well as unlawful uses, and limits liability to instances of more acute fault than the mere understanding that some of one’s products will be misused. It leaves breathing room for innovation and a vigorous commerce.” Id. at 932-33, 125 S.Ct. 2764.
Despite the Supreme Court’s rationale of contributory infringement that favors public access to unpatented goods, the majority here adopts an over-inclusive interpretation of § 271(c) that fails to heed the high Court’s caution. In particular, the majority’s expansive interpretation of the phrase “offers to sell or sells” subjects not only Quanta to contributory infringement liability, but also Dell, HP and any other reseller of Quanta’s drives. These resellers come within the majority’s reading of § 271(c) even though their only activity is to sell an unpatented optical disc drive (or even an entire computer system) that has multiple functions, only one of which is alleged to practice Ricoh’s claimed methods. Thus, whereas the majority seeks to avoid situations in which “the only remedy would be against end users of the product,” it opts for a rule that captures every seller in the chain of commerce for a given unpatented product. The majority’s proposed rule would burden the wheels of commerce and would give undue regard to the limited monopoly of the patent statute *1347 at the expense of the public interests identified by the Supreme Court.
Third, § 271(c) imposes contributory infringement liability based solely on offering to sell or selling an unpatented good, but the majority’s analysis is (on its face) driven by a concern for activities other than such sales. For example, the majority takes issue with my analysis of § 271(c), because “Quanta may escape liability as a contributory infringer merely by embedding that microcontroller in a larger product with some additional, separable feature before importing and selling it.” Nothing in § 271(c) can be read as directed to the non-sale activity of embedding components in larger products. Rather § 271(c) is concerned only with the sale of either the component or the larger product — -under the straightforward analysis of Hodosh, Quanta has not sold the component (to the extent a separable component exists), only the larger product. Similarly, the majority recognizes that “no § 271(c) liability could ever be found where an infringing component is both manufactured and assembled into something else by the same person.” Obviously, § 271(c) does not impose liability for manufacturing unpatent-ed components, and the majority’s efforts to target this activity under a provision concerned solely with an offer to sell or sale is misguided under the plain language of the statute.
In sum, my judgment is that the majority’s analysis in Section III.B is flawed according to the language of the statute; the balance of interests contemplated by the statute, as that balance has been addressed by the Supreme Court; and the types of activities to which the statute is properly addressed. I would affirm the district court for these reasons.

. Ricoh’s liability expert, T.E. Schlesinger, stated that "the electronic circuitry, firmware elements, and other components of the accused Quanta drives that [allegedly perform the methods of the '552 and '755 patents] have no practical use other than” performance of those methods. Declaration of T.E. Schlesinger in Support of Ricoh’s Opposition to Quanta’s Motion for Summary Judgment at 11 (hereinafter “Schlesinger Declaration”).