# United States Court of Appeals for the Federal Circuit

---

**IN RE BILL OF LADING TRANSMISSION AND PROCESSING SYSTEM PATENT LITIGATION**

---

**R+L CARRIERS, INC.,**
*Plaintiff-Appellant,*

**v.**

**DRIVERTECH LLC,**
*Defendant-Appellee,*

**and**

**PEOPLENET COMMUNICATIONS CORPORATION, QUALCOMM, INC., AND MICRODEA, INC.,**
*Defendants-Appellees,*

**and**

**INTERMEC TECHNOLOGIES CORP.,**
*Defendant-Appellee,*

**and**

**AFFILIATED COMPUTER SERVICES, INC.,**
*Defendant-Appellee,*

**and**

**INTERSTATE DISTRIBUTOR COMPANY,**
*Defendant-Appellee,*

**and**

**PITT OHIO EXPRESS INC. AND BERRY & SMITH TRUCKING LTD.,**
*Defendants.*

————————————

2010-1493, -1494, -1495, -1496, 2011-1101, -1102

————————————

Appeals from the United States District Court for the Southern District of Ohio in case nos. 09-MD-2050, 09-CV-0532,-09-CV-0818,  09-CV-0445,-09-CV-0179,  09-CV-0502, and 09-CV-0472, Senior Judge Sandra S. Beckwith.

————————————

Decided:  June 7, 2012

————————————

ANTHONY C. WHITE, Thompson Hine LLP, of Columbus, Ohio, argued for plaintiff-appellant.  With him on the brief was O. JUDSON SCHEAF, III.

JONATHAN S. FRANKLIN, Fulbright & Jaworski L.L.P., of Washington, DC, argued for all defendants-appellees. With him on the brief for defendants-appellees Qualcomm, Inc., et al was TILLMAN J. BRECKENRIDGE; and RICHARD S. ZEMBEK, of Dallas Texas.  Of counsel was LAURA J. BORST, of Minneapolis, Minnesota.  On the brief for defendant-appellee DriverTech, LLC, was SCOTT M. PETERSEN and PHILIP D. DRACHT, Fabian & Clendenin, P.C., of Salt Lake City, Utah.

CARSON P. VEACH, Freeborn & Peters LLP, of Chicago, Illinois, for defendant-appellee Intermec Technologies Corp.  With him on the brief was JACOB D. KOERING.

THOMAS H. SHUNK, Baker & Hostetler LLP, of Cleveland, Ohio, for defendant-appellee Affiliated Computer Services, Inc.

———————————

Before NEWMAN, PROST, and O'MALLEY, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* O'MALLEY.

Dissenting in part and concurring in part opinion filed by *Circuit Judge* NEWMAN.

O'MALLEY, *Circuit Judge*.

In this patent infringement action, R+L Carriers, Inc. ("R+L") appeals the district court's dismissal with prejudice of its amended complaints and counterclaims against DriverTech LLC ("DriverTech"), Affiliated Computer Services, Inc. ("ACS"), PeopleNet Communications Corp. ("PeopleNet"), Intermec Technologies Corp. ("Intermec"), Microdea, Inc. ("Microdea"), and Qualcomm, Inc. ("Qualcomm").[1] R+L alleged that the Appellees each indirectly infringed United States Patent No. 6,401,078 (filed Apr. 3, 2000) ("the '078 patent"). The district court dismissed the amended complaints because it believed they failed to state a claim to relief that was plausible on its face as required by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Because we agree that R+L failed to state a claim of contributory infringement against the Appellees, but find that R+L adequately stated a claim of induced infringement, we affirm-in-part, reverse-in-part and remand.

———————————

[1] We refer to all of R+L's pleadings as "complaints." Since, whether asserted as complaints or counterclaims, R+L's allegations are judged under the same standards.

## I. BACKGROUND

## A. Factual Background

The '078 patent relates to the less-than-a-load trucking industry. R+L, the owner of the '078 patent, is a major less-than-a-load carrier that utilizes the '078's patented method in its business. Order Granting Joint Mot. to Dismiss at 2, *In Re Bill of Lading Transmission & Processing Sys. Patent Litig.*, No. 1:09-md-2050 (S.D. Ohio July 15, 2010), ECF No. 162 ("*July 15, 2010 Order*"). As explained by the patent, carriers in this industry pick up freight from several different customers, which is often destined for different locations around the country. Because the freight is intended for different locations, to enable efficient delivery, the freight must be sorted and placed onto trucks with freight that is destined for a similar location. To accomplish this sorting, the freight is taken to a terminal where it is unloaded from the truck and consolidated with other freight headed in the same direction. After consolidation, the freight is reloaded onto trucks. These trucks then either deliver the freight to its destination, or transport the freight to a distribution terminal in another city to be re-sorted and re-consolidated for delivery. '078 patent col.1 ll.34–48.

To more efficiently enable delivery in the less-than-a-load trucking industry, the '078 patent claims a method that "automates the process of receiving transportation documentation and producing advance loading manifests therefrom to optimize load planning and dynamic product shipment and delivery control." *Id.* at abstract. The patented method enables shipping documents to be sent directly from the truck driver to a common point, such as a terminal, so billing and load planning can occur while the driver is en route with the freight. *Id.* at col.1 ll. 15–

20.  Claim 1, the patent's only independent claim, recites seven steps:

A method for transferring shipping documentation data for a package from a transporting vehicle to a remote processing center:

placing a package on the transporting vehicle;

using a portable document scanner to scan an image of the documentation data for the package, said image including shipping details of the package;

providing a portable image processor capable of wirelessly transferring the image from the transporting vehicle;

wirelessly sending the image to a remote processing center;

receiving the image at said remote processing center; and

prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote processing center to prepare a loading manifest which includes said package for further transport of the package on another transporting vehicle.

*Id.* at col.13 l.40–col.14 l.12.

## B.  Procedural History Prior to Dismissal of the Amended Complaints

In 2008, R+L learned that several of the Appellees and their customers were likely infringing the '078 patent.  In response, R+L sent cease-and-desist letters to DriverTech, PeopleNet, and several companies R+L suspected of direct infringement.  *July 15, 2010 Order* at

2. After receiving the letters, DriverTech and PeopleNet filed declaratory judgment actions in their home districts, seeking judgments of invalidity and non-infringement. R+L answered and filed counterclaims in those courts. In addition, R+L initiated lawsuits in the Southern District of Ohio against the remaining Appellees and several alleged direct infringers.

Because these lawsuits were spread throughout three federal district courts, R+L moved to have the cases consolidated and transferred to the Southern District of Ohio. Joint Appendix ("J.A.") 229–30. Granting the motion, the Judicial Panel on Multidistrict Litigation transferred the cases[2] to the Southern District of Ohio and assigned them to Judge Sandra Beckwith. The cases were consolidated for discovery and all pretrial proceedings, including claim construction.

After the cases were consolidated, ten of the alleged indirect infringers filed motions to dismiss or motions for judgment on the pleadings. *July 15, 2010 Order* at 3. After reviewing the briefing and conducting oral argument, the district court granted all of those motions. *Id.* The district court granted R+L leave to amend its claims, however. *Id.* R+L elected to file amended complaints against each of the six Appellees. *Id.*

While each of the amended complaints contains the same allegations with respect to the "nature of action," "jurisdiction and venue," and "infringed patent sections," they contain unique allegations as to the actions that allegedly give rise to the individual complaints. In the

---

[2] *PeopleNet Commc'ns Corp. v. R&L Carriers, Inc.* and *DriverTech, LLC v. R&L Carriers, Inc.* were transferred from the District of Minnesota and the District of Utah respectively. The other six cases consolidated by this order were already in the Southern District of Ohio.

discussion section of this opinion, we discuss these factual differences and the sufficiency of each individual amended complaint. Here, we briefly summarize the general nature of R+L's allegations, providing greater detail in Section II, as appropriate.

The amended complaints contain detailed factual allegations and, including attached exhibits, are each over one-hundred pages in length. Each outlines various products sold by the individual Appellees for use in the trucking industry. On the basis of quotations from Appellees' websites, advertising, and industry publications, R+L alleges facts about these products. The amended complaints also contain allegations about Appellees' strategic partnerships with other companies, their advertising, and their involvement at trade shows. Following these factual allegations, R+L asserts a series of "reasonable inferences," which it alleges can be drawn from the facts pled. Based on these inferences and factual allegations, R+L asserts that each Appellee is liable for inducing infringement and contributory infringement of the '078 patent.

### C. Procedural History Culminating in Dismissal of the Amended Complaints

In response to the amended complaints, Appellees filed a joint motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, arguing that the amended complaints failed to plausibly allege either direct infringement or indirect infringement. After briefly summarizing the contents of the amended complaints, the district court addressed the merits of the joint motion to dismiss. With respect to direct infringement, the district court concluded that the Intermec Amended Complaint failed to state a claim because it did not identify a specific Intermec customer who directly infringed

the '078 patent. *Id.* at 27. The district court then concluded that the other five amended complaints also failed to state a claim of direct infringement. *Id.* at 31. Although these complaints named specific customers that R+L asserted were directly infringing the '078 patent, the district court concluded that the "reasonable inferences" contained in the complaints regarding direct infringement by those customers were not, in fact, reasonable. *Id.* at 31.

Though a claim of indirect infringement can only arise where there is direct infringement and the district court concluded that no adequate claim of direct infringement had been pled, the court alternatively addressed whether the amended complaints adequately pled indirect infringement. *Id.* at 31 ("Assuming, however, that a more generous standard of indulging such ultimate inferences should be applied after *Twombly/Iqbal*, the Court will review Defendants' challenges to R&L's [sic] indirect infringement claims."). Because the district court determined R+L failed to plausibly plead that the Appellees had specific intent to induce infringement of the method outlined in '078 patent, the district court concluded that the amended complaints failed to state a claim of induced infringement. *Id.* at 37.

With respect to R+L's contributory infringement allegations, the district court first noted that, to plead contributory infringement plausibly, R+L must allege facts supporting the conclusion that the accused products are not staple articles of commerce suitable for substantial noninfringing uses. *Id.* at 37. The district court concluded that, because the amended complaints explain that the accused products can be used to speed bill payment, track a truck's locations, or monitor truck conditions, R+L failed to plausibly plead that the accused products were

*not* capable of substantial noninfringing uses. *Id.* at 39–42, 44.

Finally, because the district court dismissed R+L's claims of indirect infringement against the six Appellees, it concluded that any justiciable controversies giving rise to R+L's declaratory judgment claims were moot. *Id.* at 48. The district court, therefore, declined to exercise its discretionary jurisdiction over these claims and dismissed those as well. *Id.*

R+L filed a timely appeal to this court, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

Federal Rule of Civil Procedure 8(a)(2), "generally requires only a plausible 'short plain' statement of the plaintiff's claim," showing that the plaintiff is entitled to relief. *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011). Because it raises a purely procedural issue, an appeal from an order granting a motion to dismiss for failure to state a claim upon which relief can be granted is reviewed under the applicable law of the regional circuit. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355–56 (Fed. Cir. 2007) (citing *C&F Packing Co. v. IBP, Inc.*, 224 F.3d 1296, 1306 (Fed. Cir. 2000)). In the United States Court of Appeals for the Sixth Circuit, a district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is reviewed de novo. *Watson Carpet & Flooring Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 456 (6th Cir. 2011) (citing *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 902 (6th Cir. 2009)). While we generally construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff, we are not required to "accept as true legal conclusions or unwarranted factual inferences." *Jones v. City of Cincin-*

*nati*, 521 F.3d 555, 559 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation.") (internal quotation marks omitted).

To survive Appellees' motion to dismiss, R+L's complaint must plead "enough factual matter" that, when taken as true, "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010). This plausibility standard is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Although the standard "asks for more than a sheer possibility that a defendant has acted unlawfully," it is not "akin to a probability requirement." *Id.* (internal quotation marks omitted); *see also Twombly*, 550 U.S. at 556 ("[O]f course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.") (internal quotations and citation omitted); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) ("Specific facts are not necessary; *the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'* " (quoting *Twombly*, 550 U.S. at 555 (emphasis added) (citation omitted) (internal quotation marks omitted)). A complaint that merely pleads facts that are consistent with a defendant's liability "stops short of the line between possibility and plausibility . . . ." *Twombly*, 550 U.S. at 546 (citation omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to

draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

R+L argues that the district court erred by: (1) holding that "offer to sell" liability does not exist under 35 U.S.C. § 271(c) for a method patent; (2) holding that a complaint must identify a specific direct infringer to assert a claim for indirect infringement; (3) concluding that its claims for contributory infringement failed to plausibly state a claim for relief; (4) dismissing R+L's claims for induced infringement against the Appellees; and (5) refusing to exercise jurisdiction over R+L's claims for declaratory judgment. Appellant's Br. 2. Each of R+L's arguments are addressed in turn.[3]

### A.

In its order dismissing R+L's amended complaints, the district court stated:

[i]n dismissing R&L's [sic] original claims, the Court held that R&L [sic] must plead specific facts plausibly establishing that direct infringement has occurred or is occurring in order to proceed on its indirect infringement claims. Direct infringement of a method patent requires evidence that some entity is performing each and every step of the method. An "offer to sell" a product, without any factual allegations that the product was or is actually being used by someone to practice the patented method, is insufficient.

---

[3]    Qualcomm, Microdea, PeopleNet, and DriverTech submitted a joint brief in this matter, which will be referred to as the "Qualcomm Br." ACS and Intermec, however, filed individual briefs, which will be referred to as the "ACS Br." and the "Intermec Br." respectively.

*July 15, 2010 Order* at 25. The district court concluded that " 'offer to sell' liability does not apply to claims of infringement of a method patent." Order Granting Mots. to Dismiss at 13, *In Re Bill of Lading Transmission & Processing Sys. Patent Litig.*, No. 1:09-md-2050 (S.D. Ohio Feb. 23, 2010), ECF No. 113 ("*Feb. 23, 2010 Order*"). R+L asserts that this conclusion was erroneous and asks that we reverse it. We need not decide whether a method patent can be directly infringed by offering to sell the patented method in order to resolve this appeal, however.

In an effort to establish that it did not need to plead that a specific customer of the Appellees directly infringed the '078 patent, R+L argued to the district court that, because § 271(c)[4] liability can be premised on offers to sell, no direct infringement was necessary to establish contributory infringement. This is an incorrect statement of the law.

It is axiomatic that "[t]here can be no inducement or contributory infringement without an underlying act of direct infringement." *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004) (citation omitted); *see also Dynacore Holdings Corp. v. U.S. Philips*

---

[4]    § 271(c) states that

*[w]hoever offers to sell* or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c) (emphasis added).

*Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement . . . ."); *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993) ("Liability for either active inducement of infringement or for contributory infringement is dependent upon the existence of direct infringement."). In light of this case law, R+L is incorrect that a party could be liable for contributory infringement even if no one has yet directly infringed the patent in question.

R+L appears to confuse liability for direct infringement based upon an offer to sell a patented method with contributory infringement liability based upon offers to sell a component, material, or apparatus. These are distinct concepts, with distinct standards. Because R+L alleges only claims for indirect infringement against the Appellees and there are no allegations that either Appellees or their customers offered to sell the patented method, there is no need to address whether an offer to sell a patented method gives rise to liability under § 271(a), i.e., direct infringement. The only relevant questions before the district court were whether contributory infringement can be based on an offer to sell a product for use in practicing a patented method—by § 271(c)'s plain terms, it can—and whether direct infringement is a prerequisite for a finding of contributory infringement based on such an offer to sell—it is.

## B.

Because liability for indirect infringement of a patent requires direct infringement, R+L's amended complaints must plausibly allege that the '078 patent was directly infringed to survive Appellees' motion to dismiss. As noted above, the district court concluded that none of the amended complaints adequately pled direct infringement.

*July 15, 2010 Order* at 31.  On appeal, R+L argues that its amended complaints "adequately plead the existence of a direct infringer to support its indirect infringement claims" against the Appellees.  Appellant's Br. 49.  In response, Appellees argue that R+L failed to plead direct infringement sufficiently because the amended complaints make only conclusory allegations of direct infringement based upon unreasonable inferences.  In addition, Intermec argues that the Intermec Amended Complaint is deficient because it fails to identify one of its customers as a direct infringer.  Intermec Br. 28.  For the reasons explained below, we conclude that the district court erred in finding R+L's allegations of direct infringement deficient.

Recent Supreme Court precedent has defined the contours of the plausibility requirement.  *E.g.*, *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1323 (2011); *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.  These cases address the civil pleading standards in a variety of civil contexts.  None address the sufficiency of a complaint alleging patent infringement or causes of action for which there is a sample complaint in the Appendix of Forms to the Federal Rules of Civil Procedure, however.  Here, there is a form that governs at least some aspects of R+L's amended complaints.  Specifically, Form 18 sets forth a sample complaint for direct patent infringement.  As explained by this court, Form 18 requires:

> (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent 'by making, selling, and using [the device] embodying the patent'; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages.

*McZeal*, 501 F.3d at 1357.[5]

The sample complaint in the Appendix of Forms is relevant because Federal Rule of Civil Procedure 84 states that "the forms in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules contemplate." Fed. R. Civ. P. 84. The Advisory Committee Notes to the 1946 amendment of Rule 84 states that "[t]he amendment serves to emphasize that the forms contained in the Appendix of Forms are sufficient to withstand attack under the rules under which they are drawn, and that the practitioner using them may rely on them to that extent." *Id.* The language of Rule 84 and the Advisory Committee Notes make "clear that a pleading, motion, or other paper that follows one of the Official Forms cannot be successfully attacked." 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 3162 (2d ed. 1997). As the Supreme Court has noted, moreover, any changes to the Federal Rules of Civil Procedure "must be obtained by the process of amending the Federal Rules, and not by judicial interpretation." *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993); *see also Twombly*, 550 U.S. at 569 n.14 (acknowledging that altering the Federal Rules of Civil Procedure cannot be accomplished by judicial interpretation). Accordingly, to the extent the parties argue that *Twombly* and its progeny conflict with the Forms and create differing pleadings requirements, the Forms control. *See McZeal*, 501 F.3d at 1360 (Dyk, J.,

---

[5]    When *McZeal* was decided, the model "Complaint for Patent Infringement" appeared in Form 16. Subsequently, the Forms were renumbered, and the model patent infringement complaint was moved to Form 18. For consistency, this opinion will refer to the old Form 16 as Form 18.

concurring-in-part and dissenting-in-part) (acknowledging that, while the bare allegations contemplated by Form 18 appear deficient under *Twombly*, we are "required to find that a bare allegation of literal infringement in accordance with Form [18] would be sufficient under Rule 8 to state a claim."). Thus, whether R+L's amended complaints adequately plead direct infringement is to be measured by the specificity required by Form 18.[6]

Appellees' arguments all focus on whether the amended complaints' allegations of direct infringement contain sufficient factual detail to withstand attack under *Twombly* and *Iqbal*. For example, Qualcomm argues that "R+L does not identify a single loading manifest prepared by any of Appellees' customers, let alone one that includes wirelessly-transmitted data, and was prepared prior to removing the package from the first truck, and for the claimed purpose." Qualcomm Br. 44. In essence, the Appellees argue that the amended complaints are deficient because they do not describe precisely how each element of the asserted claims are practiced by their customers. When compared to the requirements of Form 18, this argument is premised on a pleading standard that is too stringent. *See McZeal*, 501 F.3d at 1356–57.

---

[6] It will not always be true that a complaint which contains just enough information to satisfy a governing form will be sufficient under *Twombly* and its progeny. Resolution of that question will depend upon the level of specificity required by the particular form, the element of the cause of action as to which the facts plead are allegedly inadequate, and the phrasing of the complaint being challenged. *See, e.g.*, *Hamilton v. Palm*, 621 F.3d 816, 817–18 (8th Cir. 2010) (finding complaint adequate under both Form 13 and *Twombly*); *cf. Twombly*, 550 U.S. at 564 n.10 (noting that forms governing claims for negligence require sufficient detail to permit a defendant to "know what to answer.").

As we held in *McZeal*, Form 18 and the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met. *McZeal*, 501 F.3d at 1357. Indeed, a plaintiff need not even identify which claims it asserts are being infringed. *Id.*[7]

As it relates to direct infringement, the Qualcomm, Microdea, PeopleNet, DriverTech, and ACS Amended Complaints are sufficient when measured against this standard. These amended complaints each assert that a specific customer or customers are infringing the '078 patent by using the patented method. For example, the Qualcomm Amended Complaint alleges that, in light of the facts pled, it is reasonable to infer that Cargo Transporters uses "In-Cab Scanning, the Mobile Computer Platform, and other services and devices to scan and wirelessly transmit bills-of-lading from inside the truck cab to the back office where advance loading manifests are prepared. Those actions constitute direct infringement of the '078 Patent." R+L Carriers, Inc.'s First Am. Compl. for Patent Infringement & Declaratory J. at 15, *In Re Bill of Lading Transmission & Processing Sys. Patent Litig.*, No. 1:09-md-2050 (S.D. Ohio April 6, 2010), ECF No. 123 ("*Qualcomm Am. Compl.*"). This allegation goes beyond what is required by Form 18. The Qualcomm Amended Complaint states that the patent is being infringed by use of the patented method by specific Qualcomm customers, and it references specific claim elements that R+L asserts are being practiced. As such, the complaint provides Qualcomm with information about which

---

[7] While there may be criticism of the text of Form 18, it is not within our power to rewrite it; only an act of Congress can revise the Federal Rules. *See Leatherman*, 502 U.S. at 168.

claims of the patent R+L asserts are being infringed, and by whom, and about the activities R+L believes constitute infringement. The Microdea, PeopleNet, DriverTech, and ACS Amended Complaints contain similar allegations.[8] These five amended complaints, described in more detail below, sufficiently plead direct infringement of the '078 patent.

Turning to the Intermec Amended Complaint, although it contains allegations similar to those cited above, it does not allege that a *specific* Intermec customer is infringing the '078 patent. Instead, it alleges that "Intermec's trucking customers use its Fixed Vehicle Computers, Mobile Scanners and Transportation and Logistics Solutions to scan bills-of-lading from inside the truck cab, wirelessly transmit those scanned bills-of-lading to their back offices, and prepare advance loading manifests." R+L Carriers, Inc.'s First Am. Compl. for Patent Infringement & Declaratory J. at 14, *In Re Bill of Lading Transmission & Processing Sys. Patent Litig.*, No.

---

[8]   *See* R+L Carriers, Inc.'s First Am. Compl. for Patent Infringement and Declaratory J. at 11, 13, *In Re Bill of Lading Transmission and Processing Sys. Patent Litig.*, No. 1:09-md-2050 (S.D. Ohio April 6, 2010), ECF No. 122 ("*Microdea Am. Compl.*"); R+L Carriers, Inc.'s First Am. Countercl. for Patent Infringement and Declaratory J. at 11, 14, 16, *In Re Bill of Lading Transmission and Processing Sys. Patent Litig.*, No. 1:09-md-2050 (S.D. Ohio April 6, 2010), ECF No. 125 ("*PeopleNet Am. Compl.*"); R+L Carriers, Inc.'s First Am. Countercl. for Patent Infringement and Declaratory J. at 14, *In Re Bill of Lading Transmission and Processing Sys. Patent Litig.*, No. 1:09-md-2050 (S.D. Ohio April 6, 2010), ECF No. 121 ("*DriverTech Am. Comp.*"); R+L Carriers, Inc.'s First Am. Compl. for Patent Infringement and Declaratory J. at 15–16, *In Re Bill of Lading Transmission and Processing Sys. Patent Litig.*, No. 1:09-md-2050 (S.D. Ohio April 6, 2010), ECF No. 124 ("*ACS Am. Compl.*").

1:09-md-2050 (S.D. Ohio April 6, 2010), ECF No. 126 ("*Intermec Am. Compl.*"). Accordingly, R+L asserts only that "those customers are in fact practicing the '078 Patent." *Id.* Because of this distinction, we must determine whether a plaintiff alleging indirect infringement must name a specific customer to adequately plead the predicate direct infringement.

This court has upheld claims of indirect infringement premised on circumstantial evidence of direct infringement by unknown parties. *E.g.*, *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1318 (Fed. Cir. 2009) ("[T]he jury in the present case could have reasonably concluded that, sometime during the relevant period from 2003 to 2006, more likely than not one person somewhere in the United States had performed the claimed method using the Microsoft products."). Given that a plaintiff's indirect infringement claims can succeed at trial absent direct evidence of a specific direct infringer, we cannot establish a pleading standard that requires something more. To state a claim for indirect infringement, therefore, a plaintiff need not identify a *specific* direct infringer if it pleads facts sufficient to allow an inference that at least one direct infringer exists. *E.g.*, *Atwater Partners of Tex. LLC v. AT&T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011) (holding that plaintiff's complaint does not need to identify a specific third-party direct infringer to state a claim for indirect infringement); *Oy Ajat, Ltd. v. Vatech Am., Inc.*, No. 10-4875, 2011 WL 1458052, at *4 (D.N.J. Apr. 14, 2011) (same). As long as the complaint in question contains sufficient factual allegations to meet the requirements of Form 18, the complaint has sufficiently pled direct infringement. The allegations in the Intermec Amended Complaint satisfy those requirements.

C.

Having determined that all six of the amended complaints adequately plead direct infringement, we next consider R+L's argument that the district court erred by holding in the alternative that the amended complaints fail to state a claim for indirect infringement. Form 18 does not aid R+L in this inquiry. The Forms are controlling only for causes of action for which there are sample pleadings. *Cf. Twombly*, 550 U.S. at 564 n.10 (discussing the requirements of model Form 9 for pleading negligence). We agree with several district courts that have addressed this issue that Form 18 should be strictly construed as measuring only the sufficiency of allegations of direct infringement, and not indirect infringement. *E.g.*, *Tech. Licensing Corp. v. Technicolor USA, Inc.*, 03-cv-1329, 2010 WL 4070208, at *2 (E.D. Cal. Oct. 18, 2010) ("No adequate justification exists for holding indirect infringement claims, which contain additional elements not found in direct infringement claims, to the standard of *McZeal* and Form 18. Thus, the general principles of *Twombly* and *Iqbal* must be applied to indirect infringement claims.") (internal footnotes omitted); *Sharafabadi v. Univ. of Idaho*, C09-1043, 2009 WL 4432367, at *2–3, *5 n.7 (W.D. Wash. Nov. 27, 2009) (same). In other words, because Form 18 addresses only direct infringement, we must look to Supreme Court precedent for guidance regarding the pleading requirements for claims of indirect infringement.

### 1. Contributory Infringement

Determining whether a complaint states a plausible claim for relief is a very "context-specific task." *Iqbal*, 556 U.S. at 679. Thus, the district court was required to analyze the facts plead in the amended complaints and all documents attached thereto with reference to the ele-

ments of a cause of action for contributory infringement to determine whether R+L's claims of contributory infringement were in fact plausible. Contributory infringement occurs if a party sells or offers to sell, a material or apparatus for use in practicing a patented process, and that "material or apparatus" is material to practicing the invention, has no substantial non-infringing uses, and is known by the party "to be especially made or especially adapted for use in an infringement of such patent." 35 U.S.C. § 271(c); *see also Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005). To state a claim for contributory infringement, therefore, a plaintiff must, among other things, plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses. *See Cross Med. Prods.*, 424 F.3d at 1312 (quoting *Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004)).

The district court focused on this "no substantial non-infringing uses" prong of a cause of action for contributory infringement and concluded that the amended complaints failed to state a claim for contributory infringement because the facts alleged demonstrated that the Appellees' products *do* have substantial non-infringing uses. Importantly, the district court did not conclude that the allegations of contributory infringement lacked sufficient detail to satisfy the specificity requirement of *Twombly* and *Iqbal*; the district court found that affirmative allegations of fact in the amended complaints defeated any claim of contributory infringement.[9]

---

[9] Because the plaintiff attached substantial material to its amended complaints, the district court was authorized to consider that material when assessing whether or not defendants' products had substantial non-infringing uses.

R+L argues that the district court erred in granting Appellees' motion because: (1) Appellees' products as combined and adapted have no substantial non-infringing uses; and (2) claim construction is a necessary predicate to determining whether a product has substantial non-infringing uses.

In the context of a claim of contributory infringement under § 271(c), a substantial non-infringing use is any use that is "not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Vita-Mix Corp. v. Basic Holdings, Inc.*, 581 F.3d 1317, 1327–29 (Fed. Cir. 2009). R+L argues that its contributory infringement claims are adequate because all of the amended complaints state that, as customized by the relevant Appellee "for their trucking customers, the process for scanning and wirelessly transmitting bills-of-lading from the truck cab to the back office for the preparation of loading manifests has no other substantial non-infringing use." *E.g.*, *Microdea Am. Compl.* at 20. On the basis of this allegation, R+L argues that it has adequately plead that Appellees' products have no substantial non-infringing uses. We disagree.

These allegations are tailored too narrowly; they say nothing more than "if you use this device to perform the patented method, the device will infringe and has no non-infringing uses." But that is not the relevant inquiry. For purposes of contributory infringement, the inquiry focuses on whether the accused products can be used for purposes *other than* infringement. Explaining the seminal Supreme Court contributory infringement case, in which VCR manufacturers were held not liable for contributory copyright infringement, we stated that "[t]he accused VCR could be used in two ways: to infringe a copyright by building a 'library' of broadcast movies, or in a substantial, noninfringing way to 'time-shift' a program for later

viewing or to record an uncopyrighted program." *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1339 (Fed. Cir. 2008) (citing *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 443–46 (1984)). If the proper inquiry for determining substantial non-infringing use was the inquiry suggested by R+L, the VCR manufacturers in *Sony* would have been liable for contributory infringement of copyrights as long as the VCRs were used to create a library, i.e., in an infringing way. The fact that a product may be unavailable for simultaneous non-infringing uses while being used to infringe, is not determinative. Where the product is equally capable of, and interchangeably capable of both infringing and substantial non-infringing uses, a claim for contributory infringement does not lie. The materials regarding Appellees' products from which R+L quotes, and, which are attached to the amended complaints, contain repeated descriptions of non-infringing uses to which the accused products can be put. R+L, thus, supplies the very facts which defeat its claims of contributory infringement.

Despite its own reference to the many possible uses of Appellees' products, R+L claims that this court's decision in *Ricoh* supports its claim that those uses are not "substantial non-infringing" ones. This reliance is misplaced. In *Ricoh*, this court held that summary judgment of no contributory infringement could not be granted in favor of an optical disc drive manufacturer because, although its drives were capable of writing data by either an infringing method or a non-infringing method, the drives contained "at least some distinct and separate components used only to perform the allegedly infringing write methods." 550 F.3d at 1336, 1340. R+L's amended complaints do not allege that certain of Appellees' products can perform the infringing method and *only* the infringing method. Rather, as noted, R+L alleges that *if* the prod-

ucts are used to scan bills-of-lading and *if* the bills-of-lading are used to make a loading manifest, *then* the products have no substantial non-infringing uses. But Appellees' products do not need to be used to practice the patented method, and R+L's own allegations make clear that they can be used for multiple other purposes. That practicing the patented method may be the most logical or useful purpose for Appellees' products does not render the alternative uses "unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Vita-Mix Corp.*, 581 F.3d at 1327–29.[10]

Finally, R+L argues that the district court erred by determining that there were substantial non-infringing uses for Appellee's products without first construing the claims of the patent. Appellant's Br. 39–43. As the amended complaints make clear, Appellees' products can be used to, inter alia, speed billing and driver settlement, or scan proof of delivery documents. Indeed, the amended complaints assert that Appellees advertised these very uses of their products. None of these tasks involves scanning bills-of-lading which are created prior to package pick-up. '078 patent col.1, ll.49–53. These tasks also have nothing to do with using a bill-of-lading to plan which loads should be consolidated onto which trucks for

---

[10] Though R+L devotes several pages of its brief to a discussion of *Hodosh v. Block Drug Co.*, 833 F.2d 1575 (Fed. Cir. 1987), *Hodosh* is not relevant here. Contrary to R+L's suggestion, this court did not determine whether the product at issue in *Hodosh* had substantial non-infringing uses. Indeed, we explicitly stated that "we do not . . . express an opinion on whether toothpaste containing potassium nitrate is a 'material part of the invention' or is a 'staple article or commodity of commerce suitable for substantial noninfringing uses.'" *Id.* at 1579 n.12. Absent a holding on this issue, *Hodosh* is not helpful to R+L.

delivery. The patented method, however, requires performance of all of these steps. *Id.* at col.13 l.40–col.14 l.46. Here, formal claim construction is not required to reach the conclusion that each Amended Complaint affirmatively establishes that Appellees' products can be used for non-infringing purposes. Nor is claim construction required to determine that these uses are not "unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Vita-Mix Corp.*, 581 F.3d at 1327. Thus, the district court did not err when it concluded that the Appellees' products had substantial non-infringing uses without first construing the claims of the '078 patent.

Because the amended complaints actually make clear on their face that Appellees' products *do* have substantial non-infringing uses, R+L has not stated a claim for contributory infringement against any of the Appellees. We thus affirm dismissal of R+L's contributory infringement claims.

## 2. Induced Infringement

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). Liability under § 271(b) "requires knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011); *see also DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) ("[I]nducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement."). To survive Appellees' motion to dismiss, therefore, R+L's amended complaints must contain facts plausibly showing that Appellees specifically intended their customers to infringe the '078 patent and knew that the customer's acts constituted infringement. This does not mean, however,

that R+L must prove its case at the pleading stage. *Skinner*, 131 S. Ct. at 1296 ("Because this case was resolved on a motion to dismiss for failure to state a claim, the question below was 'not whether [Skinner] will ultimately prevail' on his procedural due process claim, but whether his complaint was sufficient to cross the federal court's threshold.") (citations omitted); *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.") (internal quotation marks and citation omitted).

The district court concluded that R+L's amended complaints failed to state a claim for induced infringement because its claims relied upon ultimate inferences that the district court found "implausible and unreasonable." *July 15, 2010 Order* at 35–36. R+L argues that the district court erred because the Appellees' statements quoted in the amended complaints and the reasonable inferences drawn therefrom give rise to a plausible claim for relief premised upon induced infringement. Appellants' Br. 27–38. We agree.

Before turning to the individual amended complaints and the specific allegations therein, we note a flaw that pervades the district court's assessment of R+L's allegations of induced infringement—its failure to draw all reasonable inferences in favor of the non-moving party. *E.g.*, *Travel Agent Comm'n Antitrust Litig.*, 583 F.3d at 903 (citing *Jones*, 521 F.3d at 559). *Twombly* did not alter this basic premise. Nothing in *Twombly* or its progeny allows a court to choose among competing inferences as long as there are sufficient facts alleged to render the non-movant's asserted inferences plausible. *Watson Carpet*, 648 F.3d at 458 ("Often, defendants' conduct has several plausible explanations. Ferreting out the most

likely reason for the defendants' actions is not appropriate at the pleadings stage.").

In assessing whether it is reasonable to infer intent from statements or conduct, moreover, the Supreme Court recently made clear that a court must assess the facts in the context in which they occurred and from the standpoint of the speakers and listeners within that context. *Matrixx*, 131 S. Ct. at 1324–25. In *Matrixx*, the Supreme Court held that the plaintiff's complaint sufficiently alleged facts plausibly suggesting that the defendant made material misrepresentations in violation of § 10(b) of the Securities Exchange Act "with an intent to deceive, manipulate, or defraud." *Id.* at 1317, 1323–24. According to the complaint, in response to information indicating that the defendant's Zicam product caused anosmia,[11] it "hired a consultant to review the product . . . and convened a panel of physicians and scientists in response to [a] presentation" that suggested that Zicam caused anosmia. *Id.* at 1324. In addition, "[the defendant] issued a press release that suggested that studies had confirmed that Zicam does not cause anosmia when, in fact, it had not conducted any studies relating to anosmia and the scientific evidence at that time . . . was insufficient to determine whether Zicam did or did not cause anosmia." *Id.* Despite these allegations, the defendant's asserted that the most obvious inference to draw from its actions was that it did not disclose the information because it believed the evidence was insufficient to indicate a causal relationship between Zicam and anosmia. The Supreme Court concluded, however, that the plaintiffs adequately pled intent because the allegations, taken collectively and in context, also gave rise to an "inference that [the defen-

---

[11]    Anosmia refers to the loss of the sense of smell. *Id.* at 1314.

dant] elected not to disclose the reports of adverse events not because it believed they were meaningless but because it understood their likely effect on the market." *Id.* at 1324–25. That alternative inferences from those facts were also reasonable did not render the complaint deficient.

As in *Matrixx*, when the allegations in R+L's lengthy and detailed amended complaints are considered as a whole, and the facts are considered in the context of the technology disclosed in the '078 patent and the industry to which Appellees sell and tout their products, it is clear that the inferences R+L asks to be drawn are both reasonable and plausible.[12]

### a.  DriverTech Amended Complaint

As previously discussed, the '078 patent discloses a method in which documents are scanned on board vehicles for use by dispatchers in preparing manifests dictating which shipments should be consolidated and shipped on which trucks heading to which location. The DriverTech Amended Complaint alleges that, based on DriverTech's public statements, it is reasonable to infer that:

> DriverTech affirmatively sells, offers to sell, encourages, and intends for its customers to use the DT4000 TruckPC and DTScan In-Cab Scanning in conjunction with other applications and processes, and in a manner that infringes on the patented process claimed in the '078 Patent. DriverTech's

---

[12]  As in *Matrixx*, we do not to say that these inferences are, in fact, correct or that they are the only fair inferences which can be drawn from the facts alleged. 131 S. Ct. at 1335. We determine only the sufficiency of R+L's complaints, in the context of the '078 patent.

> conduct amounts to active inducement of in-
> fringement in violation of 35 U.S.C. § 271(b).

*DriverTech Am. Compl.* at 30. In support of this allega-
tion, among other things, R+L quotes DriverTech's state-
ment that its mobile computer products allow customers
"to perform in-cab scanning of critical proof of delivery
(POD) and other driver documents" and to transmit these
documents wirelessly. *Id.* at 6. R+L points out that
DriverTech touts that it is partnered with McLeod Soft-
ware, "the leading provider of dispatch . . . software to the
transportation industry," and that its products will help
"improve[] asset utilization and fleet maintenance." *Id.* at
4, 6. And, the complaint alleges that DriverTech made
these claims after it received a cease and desist letter
making it aware of the '078 patent. R+L asserts that,
when viewed in the context of the industry in which the
patented method is practiced, it is more than reasonable
to infer that DriverTech intended to induce its customers
to use its products to practice the patented method and
did so with knowledge of the patent.

DriverTech, like the district court, discounts these
facts and inferences and finds them wanting because R+L
has not provided statements from DriverTech which
specifically instruct DriverTech customers to perform all
of the steps of the patented method. Qualcomm Br. 38–
40. DriverTech argues, moreover, that the fact that its
products have substantial non-infringing uses weighs
against inferring that it intended to induce its customers
to engage in an infringing one. These arguments suffer
from the same deficiency. DriverTech is essentially
arguing that, at the pleading stage, R+L must allege facts
that prove all aspects of its claims, or at the very least
make those claims probable. But that is not what is
required. As the Supreme Court has explained, the
plausibility requirement is not akin to a "probability

requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal" that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556.

The specification of the '078 patent makes clear that the method it claims improves asset utilization and efficiency by enabling route planning to occur while shipments are still en route. To achieve these benefits, bills-of-lading are scanned in the truck cab and transmitted while the truck is en route. Significantly, other than the method claimed in the '078 patent, no appellee has identified a method by which a trucking company could increase efficiency and improve asset utilization by scanning shipping documents and transmitting them from the cab of the truck. Common sense indicates that advertising that your product can be used in conjunction with dispatch software to improve asset utilization and provide operational efficiency to the less-than-a-load shipping/trucking industry gives rise to a reasonable inference that you intend to induce your customers to accomplish these benefits through utilization of the patented method. This is sufficient to push the complaint past the line "between possibility and plausibility." *Twombly*, 550 U.S. at 557.

Because the DriverTech Amended Complaint gives DriverTech fair notice of what R+L's claim is and the facts upon which it rests, and the claim of induced infringement is plausible on those facts, we conclude that the district court erred when it dismissed R+L's DriverTech Amended Complaint.

### b. ACS Amended Complaint

The ACS Amended Complaint explains that ACS advertises that its business process and information technology products, including mobile in-cab scanning

products, enable its customers to "reduce costs and im-
prove efficiencies." *ACS Am. Compl.* at 4. ACS claims
that use of its Capture ANYWARE product, which enables
in-cab scanning, will "[r]educe shipping costs from agent
office/terminal locations." *Id.* at 8. ACS touts the ability
of its products to integrate with "all major dispatch sys-
tem vendors." *Id.* at 13. Importantly, one of its custom-
ers, Frozen Food Express, claims that it uses ACS's
products "to assist in the *important pre-planning and
routing of [less-than-a-load] shipments*—helping us to
make our [less-than-a-load] operation more productive
and more responsive to our customer needs." *Id.* at 15. In
addition, Frozen Food Express believes that use of ACS's
products "will revolutionize our less-than-truckload (LTL)
operation, enabling us to track not just our trucks, but
also the shipments that they are carrying." *Id.* R+L
alleges that ACS became aware of the '078 patent in
November of 2009 when the complaint was filed and that
the documents quoted in the ACS Amended Complaint
were publicly available after this date. Based on these
facts and ACS's involvement in tradeshows where it
advertises the benefits and capabilities of its products to
the shipping and trucking industry, R+L alleges that it is
reasonable to infer that ACS intends to induce its custom-
ers to practice the method disclosed in the '078 patent.

Like DriverTech, ACS argues that these facts do not
give rise to a claim for relief that is plausible on its face.
The district court found that, because ACS's advertising
does not expressly mention preparing an "advance loading
manifest,"—an essential step of the patented method—it
cannot intentionally induce its customers to practice the
'078 patent. ACS also asserts that the district court
correctly concluded that R+L's ultimate inferences are
implausible because one cannot deduce an intent to
induce infringement on the basis of touting a product's

ability to "improve efficiency," "provide end-to-end solution[s]," or "increase productivity." ACS Br. 41 (quoting *July 15, 2010 Order* at 36). These arguments fail for two reasons.

First, while ACS and the other Appellees are correct that to prove infringement of a method patent a plaintiff must show that every step of the method is performed in the claimed order, nothing in *Twombly* or *Iqbal* demands this level of factual specificity at the pleading stage. Such a requirement would be dangerously close to requiring a plaintiff to prove he is entitled to relief at the pleading stage. At this stage of the litigation a plaintiff is only required to plead enough facts to enable a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

This determination is, of course, case specific. In some circumstances, failure to allege facts that plausibly suggest a specific element or elements of a claim have been practiced may be fatal in the context of a motion to dismiss. Or, as with R+L's contributory infringement claims, facts may be pled affirmatively which defeat a claim on its face. But, there is no requirement that the facts alleged mimic the precise language used in a claim; what is necessary is that facts, when considered in their entirety and in context, lead to the common sense conclusion that a patented method is being practiced.[13]

---

[13] We agree with R+L that, to the extent the district court based its assessment of the "reasonableness" of a given inference of infringement on a narrow construction of the patent's claims, claim construction at the pleading stage—with no claim construction processes undertaken—was inappropriate. Appellant's Reply Br. 9–11. We afford the claims their broadest possible construction at this stage of the proceedings.

Again like DriverTech, ACS and the district court analyzed the individual facts in the ACS Amended Complaint in isolation and without reference to the background of the invention. As noted earlier, one of the most logical ways to utilize in-cab scanning and transmission of documents to increase efficiency and help load planning would be to use the method disclosed in the '078 patent. Significantly, Frozen Food Express' statement that it uses ACS's products for *"important pre-planning and routing of [less-than-a-load] shipments"* reads much like an admission that it utilizes ACS's products in the same way in which the patented method is employed. *ACS Am. Compl.* at 15. After reviewing the '078 patent and considering the relatively limited ways in which in-cab scanning and transmission of shipping documents could be used for pre-planning and routing of shipments, we conclude that it is plausible to infer that ACS is intentionally inducing infringement of the '078 patent. The district court erred when it concluded otherwise.

### c.  PeopleNet Amended Complaint

R+L's PeopleNet Amended Complaint alleges that, because it became aware of the '078 patent in January of 2009 at the latest, it is reasonable to infer that PeopleNet intends to induce its customers to infringe the '078 patent. In support of this allegation, R+L, quoting from publicly available advertising materials distributed by PeopleNet, alleges that PeopleNet claims that its mobile computing products "increase efficiency of automated paper-based manifest processes. Through PACOS, load and route information is automatically delivered to the driver upon arrival through an automated manifest that is integrated with [the trucking company's] dispatch system." *PeopleNet Am. Compl.* at 9. Its mobile scanning and transmission products can be used to "[c]apture bill-of-lading form information, cargo bar code information or

other [information] through an in-cab tethered option . . . ." *Id.* at 4. In a 2007 press release, Berry & Smith Trucking, a PeopleNet customer, announced that it was "looking to In-Cab scanning to improve driver efficiency by expediting document flow to and from the vehicle . . . ." Id. at 11. In the same press release, PeopleNet touted that "In-Cab Scanning is designed to enable drivers to scan and transmit critical transportation documents, such as bills-of-lading . . . immediately from virtually anywhere." *Id.* In addition, "[w]ith documents in hand, dispatch will be able to more *quickly and surely dispatch loads and assign drivers*." *Id.* Frozen Food Express, another customer, states that it uses PeopleNet products in conjunction with ACS products to "assist in the *important pre-planning and routing of [less-than-a-load] shipments*." *Id.* at 15. PeopleNet also advertises that Pitt Ohio Express uses its products, so "[t]he dispatcher [can] send information to the truck when it is determined which driver will be loading the order." *Id.* at Exhibit J at 8.

In response to R+L's argument that it has pled sufficient factual material to state a claim for relief that is plausible on its face, PeopleNet raises the same arguments as DriverTech and ACS. Specifically, it argues that the PeopleNet Amended Complaint does not raise facts that establish that it intended to induce its customers to perform every step of the patented method, and that it is not reasonable to infer intent to induce from the general statements it made about the benefits of using its products. Qualcomm Br. 38–39. For all of the reasons discussed above, these arguments fail.

The PeopleNet Amended Complaint contains PeopleNet's own statements that show its products can be used to scan documents and transmit them from in-cab. *PeopleNet Amended Complaint* at 4. Its products, moreover,

can be used to scan bills-of-lading, *Id.*, and integrated with dispatch systems so that, "[w]ith documents in hand, dispatch will be able to more *quickly and surely dispatch loads and assign drivers.*" *Id.* at 9, 15. When viewed in the context of the invention, these statements give rise to the reasonable inference that PeopleNet advertises the benefits of its products to induce its customers to infringe the '078 patent. The district erred when it concluded otherwise.

## d. **Intermec Amended Complaint**

The Intermec Amended Complaint alleges that Intermec advertises that its mobile computers, scanners, and software products "enable companies to accurately track every item throughout their supply chain and improve efficiency, saving immeasurable hours in cross docking, yard management and pick-up and delivery operations." *Intermec Am. Compl.* at 3. Intermec also advertises that its products can be used in "Dispatch/Route Optimization," and "Load Management." *Id.* at 7–8. Use of its scanners and other products "streamlin[e] the movement of drivers and shipments, allow[] for greater utilization of assets and resources. . . . Instantly available information means faster invoicing, more accurate route planning, scheduling and dispatching and less time in the cab for drivers." *Id.* at 7. In addition, Intermec regularly hosts seminars for existing and potential customers to demonstrate how its products can be used and the potential benefits of its products. *Id.* at 22. For instance, Intermec advertises that those who attend such events will "[d]iscover ways to increase your company's efficiency and productivity in supply chain activities such as receiving shipping . . . ." *Id.* R+L alleges that Intermec became aware of its patent, at the latest, in July or August when it was served with its complaint. *Id.* at 25. On the basis of these facts, R+L alleges that it is reasonable

to infer that Intermec intends to induce its customers to infringe the '078 patent.

Intermec first argues that the district court correctly concluded that R+L's allegations were insufficient because general statements advertising the benefits of its products are insufficient to plausibly plead intent to induce. Intermec Br. 42–43. For the reasons already discussed, we disagree.

Intermec next argues that the Amended Complaint pleads facts which actually establish that Intermec's scanners cannot be used to scan bills-of-lading, a critical step in the patented method. Again, we disagree. Although Intermec argues that its products are meant to be used on fork lifts and not for the purposes discussed in the '078 patent, Intermec's own materials explain that its products can be used for "pick-up & delivery, in-transit visibility, home delivery and field service," graphically showing a truck operator either picking up or delivering a package to a resident's home. *See id.* at 10. This graphic makes clear that Intermec's products can be used, and plausibly are intended for use, outside of a warehouse. As a general matter, moreover, we must accept as true allegations contained in the complaint. Nothing in the complaint convinces us that we should decline to accept the truthfulness of R+L's allegation that, based on Intermec's advertising materials, Intermec scanners can be used to scan documents necessary to create loading manifests. For these reasons, we conclude that, the district court erred in dismissing the Intermec amended complaint.

### e.  Microdea Amended Complaint

The Microdea Amended Complaint alleges that Microdea became aware of the '078 patent, at the latest, in March of 2009 when it was served with the complaint.

*Microdea Am. Compl.* at 27. Microdea advertises that its in-cab scanning software products enable "driver[s] to scan [Proof of Delivery] and [bills-of-lading] documents and send them through the existing mobile communications system directly to your billing center for immediate processing." *Id.* at 4. In addition, Microdea touts that its products are integrated "with today's leading Transportation Management Systems." *Id.* at 8. Berry & Smith Trucking stated that it uses Microdea's product in conjunction with PeopleNet's products to "improve driver efficiency by expediting document flow to and from the vehicle . . . ." *Id.* at 10. A 2007 press release, discussing Micodea's In-Cab scanning product, touted it as enabling "drivers to scan and transmit critical transportation documents, such as bills of lading . . . immediately from virtually anywhere." *Id.* This ability enables dispatch "to more quickly and surely dispatch loads and assign drivers." *Id.* In addition, Microdea advertises that its products allow Berry & Smith Trucking to "transmit cargo manifests, billing orders and other documents directly to drivers on the road." *Id.* On the basis of these factual allegations, R+L alleges that it is reasonable to infer that Microdea intends to induce its customers to infringe the '078 patent.

In opposition, Microdea argues that its broad statements about the benefits of its products do not give rise to the reasonable inference that it intends to induce its customers to infringe the '078 patent. And, it argues that, because the complaint fails to allege that it specifically instructs its customers to perform each of the steps of the patented method, it fails to state a claim for relief. We have already addressed the deficiencies of these arguments; they fare no better here. We conclude, therefore, that the district court erred when it dismissed the Microdea Amended Complaint.

### f.   Qualcomm Amended Complaint

Finally, R+L alleges that it is reasonable to infer that Qualcomm intends to induce its customers to infringe the '078 patent.  In support of this inference, the Qualcomm Amended Complaint alleges that Qualcomm was aware of the patent as of June 2009, if not earlier, when it was served with the complaint.  *Qualcomm Am. Compl.* at 28.  The Qualcomm Amended Complaint alleges that Qualcomm advertises that its mobile computing and communication products can be used for in-cab scanning.  *Id.* at 10.  Its in-cab scanning products enable "drivers to scan and transmit documents from the cab of their truck directly into the customer's back-office system . . . and help[s] companies improve back-office efficiency."  *Id.* at 4–5.  Qualcomm states that its scanning products can be used to scan "bills of lading and other critical information, directly resulting in improved productivity and profitability."  *Id.* at 5–6.  In addition, Qualcomm advertises that its mobile computing products in combination with other software products and services it sells achieve increased efficiency "[b]y automating functions [such] as load assignments . . . ."  *Id.* at 10.  Cargo Transporters is currently utilizing Qualcomm's mobile computing products with in-cab scanning in its fleet of trucks.  *Id.* at 14.

Qualcomm asserts that the district court properly dismissed the Qualcomm Amended Complaint because all of the statements with which R+L supports its inference of intent to induce use of the patented method are too general to support that inference.  Qualcomm Br. 38–39.  We have already rejected these arguments.  Indeed, the Qualcomm Amended Complaint contains factual allegations that are even more pointed than many of the others.  Qualcomm's own words make clear that it advertises that its products can scan bills-of-lading from the cab of the truck for transmission to the back office.  *Qualcomm Am.*

*Compl.* at 4–6. These transmitted documents can then be utilized to automate load planning. *Id.* at 10. Only by ignoring the context in which the '078 patent's method is used could we conclude that it is unreasonable to infer that Qualcomm intended to induce infringement of the '078 patent. When properly viewed, the Qualcomm Amended Complaint states a claim for induced infringement that is certainly plausible on its face. Accordingly, the district court erred by dismissing it.

### 3. Summary

For the reasons discussed above, we are convinced that all of R+L's amended complaints contain sufficient factual allegations to enable this court to reasonably conclude that each of the Appellees is liable for inducing infringement of the '078 patent. This is all that is required to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Here we are not presented with a case in which R+L's complaints merely contain "a formulaic recitation of a cause of action's elements." *Twombly*, 550 U.S. at 545; *see also Enlink Geoenergy Servs., Inc. v. Jackson & Sons Drilling & Pump, Inc.*, No. 09-03524, 2010 WL 1221861, at *2 (N.D. Cal. Mar. 24, 2010) (dismissing plaintiff's complaint for induced infringement because it "merely repeats the exact language from the statute without adding any factual allegations."). Instead, R+L's amended complaints contain detailed factual allegations and reasonable inferences drawn therefrom that plausibly establish that Appellees are inducing their customers to infringe the '078 patent. Accordingly, we reverse the district court's judgment dismissing R+L's claims for induced infringement against the Appellees.

## D.

Because the district court dismissed all of the amended complaints against the Appellees, it concluded that any justiciable controversy between R+L and the Appellees was mooted. *July 15, 2010 Order* at 44. In light of this conclusion, the district court declined to exercise jurisdiction over R+L's claims for declaratory judgments. *Id.* at 44–45. Because we conclude that the district court erred by dismissing the amended complaints in their entirety, the district court must reconsider this issue in light of our opinion.

### III. CONCLUSION

As explained above, we conclude that the district court committed error by dismissing the amended complaints because they failed to adequately plead direct infringement. The district court, moreover, erred when it concluded that, in the alternative, the amended complaints failed to state a claim for induced infringement against the Appellees. In light of this determination, the district court must proceed with these actions and revisit its decision not to exercise jurisdiction over R+L's claims for declaratory judgment. With respect to the district court's conclusion that the amended complaints failed to state a claim for contributory infringement against the Appellees, however, we agree. Accordingly, the district court's judgment is affirmed-in-part, reversed-in-part and remanded.

### AFFIRM-IN-PART, REVERSE-IN-PART AND REMAND

#### COSTS

Each party shall bear its own costs

# United States Court of Appeals
# for the Federal Circuit

---

**IN RE BILL OF LADING TRANSMISSION AND
PROCESSING SYSTEM PATENT LITIGATION**

---

**R+L CARRIERS, INC.,**
*Plaintiff-Appellant,*

**v.**

**DRIVERTECH LLC,**
*Defendant-Appellee,*

**and**

**PEOPLENET COMMUNICATIONS CORPORATION,
QUALCOMM, INC.,** AND **MICRODEA, INC.,**
*Defendants-Appellees,*

**and**

**INTERMEC TECHNOLOGIES CORP.,**
*Defendant-Appellee,*

**and**

**AFFILIATED COMPUTER SERVICES, INC.,**
*Defendant-Appellee,*

**and**

**INTERSTATE DISTRIBUTOR COMPANY,**
*Defendant-Appellee,*

**and**

# PITT OHIO EXPRESS INC. AND BERRY & SMITH TRUCKING LTD.,
*Defendants.*

————————————

2010-1493, -1494, -1495, -1496, 2011-1101, -1102

————————————

Appeals from the United States District Court for the Southern District of Ohio in case nos. 09-MD-2050, 09-CV-0532,-09-CV-0818, 09-CV-0445,-09-CV-0179, 09-CV-0502, and 09-CV-0472, Senior Judge Sandra S. Beckwith.

————————————

NEWMAN, *Circuit Judge*, dissenting in part, concurring in part.

The court today establishes a new pleading standard for patent infringement actions, discarding the general national standard for civil complaints. The court's new standard absolves patent infringement pleadings from the uniform requirements of the Federal Rules and Supreme Court precedent, and now holds that the Court's rulings in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), do not apply to patent infringement. The panel majority holds that a sample form, in the Appendix to the Rules since 1938, established this exception, dominating the Supreme Court's reiterations that "*Twombly* expounded the pleading standard for all civil actions." *Iqbal*, 556 U.S. at 684. Maj. Op. at 15 ("to the extent the parties argue that *Twombly* and its progeny conflict with the Forms and create differing pleadings requirements, the Forms control").

As illustrated herein, my colleagues hold that pleadings of direct patent infringement need not provide the information otherwise required in all complaints. The court holds that the complaint need state only the patent number and date, the general subject matter, and that the marking requirement was met. My colleagues hold that this terse revelation applies in patent cases, and negates not only the Court's statements in *Twombly* and *Iqbal*, but also the vast body of judicial precedent on the principles of notice pleading.

I cannot agree with the panel majority's view that the Forms override the Court's guidance that: "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Such guidance was as applicable in 1938 as it is today. The plaintiff must, at the very least, in all cases "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). From my colleagues' contrary ruling, I respectfully dissent.

## I

Complaints for direct infringement are subject to the pleading standards that apply to all civil actions. The court holds that Form 18 controls the content of the complaint, and that the courts have erred, these many years, in requiring more than is set forth in Form 18, as follows:

1. (Statement of Jurisdiction — See Form 7.)

2. On ___date___, United States Letters Patent No. _____ were issued to the plaintiff for an invention in an *electric motor*. The plaintiff owned the patent throughout the period of the defendant's infringing acts and still owns the patent.

3. The defendant has infringed and is still infringing the Letters Patent by making, selling, and using *electric motors* that embody the patented invention, and the defendant will continue to do so unless enjoined by this court.

4. The plaintiff has complied with the statutory requirement of placing a notice of the Letters Patent on all *electric motors* it manufactures and sells and has given the defendant written notice of the infringement.

Form 18 does not require general or specific facts of infringement, or any other accommodation of complexity.

The purpose of the Federal Rules is to provide a uniform procedure for all civil actions and proceedings. Fed. Rule Civ. Proc. 1. The Court has consistently reinforced this purpose. In *Swierkiewicz v. Sorema*, 534 U.S. 506, 513 (2002), the Court stated that "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." These "limited exceptions" focus on Rule 9 and the Private Securities Litigation Reform Act of 1995. *See Iqbal*, 556 U.S. at 684 (the argument that *Twombly* is limited to the antitrust context is "incompatible with the Federal Rules of Civil Procedure"). No support can be found for the panel majority's theory that all "causes of action for which there is a sample complaint in the Appendix of Forms," maj. op. at 14, are immunized from the general pleading rules, as established under Rule 8(a) and elaborated by precedential rulings of the Supreme Court.

Heretofore, this court has been faithful to the criteria explained in *Twombly* and *Iqbal*. Examples abound. *See, e.g., Juniper Networks, Inc. v. Shipley*, 643 F.3d 1346, 1350

(Fed. Cir. 2011) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."); *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1311 (Fed. Cir. 2011) ("A plaintiff is not empowered under the Rules 'to plead the bare elements of his cause of action . . . and expect his complaint to survive a motion to dismiss.'"); *Totes-Isotoner Corp. v. United States*, 594 F.3d 1346, 1355 (Fed. Cir. 2010) ("a plaintiff must provide a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests"); *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007) ("The Supreme Court has explained what is necessary for a claimant to state a claim"); *Yip v. Hugs to Go LLC*, 377 Fed. Appx. 973, 975 (Fed. Cir. 2010) (the complaint must "set[ ] forth the facts that provide a basis to assert that [the defendant] has violated the patent laws by selling the books covered by the patent and describe[ ] the proof upon which the plaintiff will rely to support this assertion"). It is apparent that minimalist compliance with Form 18 may not sufficiently "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The district courts have responded to Form 18 in irregular ways. A few district courts have, like the panel majority, restricted Form 18 by holding that it applies only to direct infringement. Others have stated that exceptions may be made for *pro se* plaintiffs, citing *McZeal*, 501 F.3d at 1356. Others have measured the adequacy of the complaint by whether the information is sufficient to permit a reasoned response by the defendant. Others have held that *Twombly* and *Iqbal* apply, to the exclusion of Form 18. *See, e.g.*, *Rovi Corp. v. Hulu, LLC*, 2012 WL 261982, at *2 (D. Del. Jan. 27, 2012) (holding that Form 18 does not satisfy the pleading standards, which require that "to survive a motion to dis-

miss, a plaintiff must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged'"); *Illinois Tool Works Inc. v. Elektromanufaktur Zangenstein Hanauer GmbH & Co. KgaA*, 2011 WL 6002967, at *2-*3 (E.D. Wis. Nov. 30, 2011) (holding that Form 18 does not control and that the complaint must "contain enough specificity to give the defendant notice of what products or aspects of products allegedly infringe the plaintiff's patent"); *Medsquire LLC v. Spring Med. Sys. Inc.*, 2011 WL 4101093, at *1-*2 (S.D.N.Y. Aug. 31, 2011) (the "main issue here is whether a pleading that follows Form 18 . . . is sufficient in light of the Supreme Court's decisions in *Twombly* and *Iqbal*," and ruling that to be sufficient the pleading must contain enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The D.C. Circuit has recognized that the forms are to be read along with Supreme Court guidance, and not as a separate pleading standard. *See Aktieselskabet AF 21 v. Fame Jeans Inc.*, 525 F.3d 8, 17 (D.C. Cir. 2008) (stating that the forms, including Form 18, "illustrate the concept of fair notice," and quoting *Twombly* for the requirement that "a complaint should simply identify the 'circumstances, occurrences, and events' giving rise to the claim.").

Some courts have not quibbled about Form 18. *See Clear With Computers, LLC v. Hyundai Motor Am., Inc.*, 2010 WL 3155885, *4 (E.D. Tex. Mar. 29, 2010) ("Hyundai's argument-that the generic pleading of patent cases as shown in Form 18 is no longer sufficient under *Iqbal* and *Twombly* would render Rule 84 and Form 18 invalid. This cannot be the case."); *Traffic Info., LLC v. YAHOO! Inc.*, 2010 WL 2545500, *2 (E.D. Tex. Apr. 13, 2010) ("The Supreme Court's decisions in *Twombly* and *Iqbal* have not affected the adequacy of complying with Form 18."). In *Realtime Data, LLC v. Stanley*, 721 F. Supp.2d 538, 543

(E.D. Tex. 2010), the district court stated that "Realtime's allegations of direct infringement fail to adhere to Form 18 in that they do not specifically identify any accused products or services." The district court in *Enlink Geoenergy Services, Inc. v. Jackson & Sons Drilling & Pump, Inc.*, 2010 WL 1221861, \*2 (N.D. Cal. Mar. 24, 2010), explained that "Form 18 requires a plaintiff to identify the device or method that is accused of infringement," and found the plaintiff's complaint insufficient.

The genesis of Form 18 does not aid its understanding. Various sample forms were implemented with the Federal Rules in 1938, with the statement: "The following forms are intended for illustration only." The minutes of an October 1936 meeting of the Advisory Committee on Rules for Civil Procedure, at the inception of the Federal Rules, contain a transcript of arguments by the patent bar for special rules for patent cases; the chairman of the Advisory Committee, Judge William D. Mitchell, disagreed, stating that "we are trying to establish uniform rules in equity cases as well as in law cases." Minutes at 34-35 (Oct. 1936), at www.uscourts.gov/RulesAndPolicies/FederalRulemaking/Overview.aspx.

A principal draftsman of the Federal Rules, Chief Judge Charles E. Clark of the Second Circuit, later explained: "When the rules were adopted there was considerable pressure for separate provisions in patent, copyright, and other allegedly special types of litigation. Such arguments did not prevail; instead there was adopted a uniform system for all cases. . . ." *Nagler v. Admiral Corp.*, 248 F.2d 319, 323 (2d Cir. 1957). Wright & Miller, *Federal Practice and Procedure*, states that: "The point of *Nagler* simply is that the federal rules reject the notion that certain actions inherently carry a different pleading burden than others."

*Id.* at §1221. Wright & Miller summarize the pleading requirements as follows:

> The requirements for pleading set forth in Federal Rule 8(a) apply to all actions in the federal courts. Other than Rule 9, which governs a limited number of particular matters, and the existence of at least one federal statute providing a specialized pleading requirement for certain types of federal cases [the Private Securities Litigation Reform Act of 1995], there are no special pleading provisions in the federal rules for civil cases.

*Id.* It appears that in 1938 Form 18 (then Form 16) was not viewed as "special." Indeed patents, technology, and litigation were generally less complex.

Recent unrest concerning the forms is reflected in the Minutes of the Advisory Committee for recent years. The Minutes for October 2009 state: "The lack of attention over time is reflected in the persistence from 1938 to 2007 of forms that set out specific illustrative dates ranging from 1934 to 1936." The October 2009 Minutes state that the "Rule 84 Forms attached to the Civil Rules have seemed troubling for reasons antedating the *Twombly* and *Iqbal* decisions, and independent of them," and that "the Chief Judge of the Federal Circuit, for example, has called the Form 18 complaint for patent infringement an embarrassment." The Minutes of the March 2010 meeting state:

> Rule 84 says the forms "suffice under these rules." For the most part, however, the Committee has paid attention to the Forms only when adding new forms to illustrate new rules provisions. Looking at the set as a whole, there are reasons to wonder why some topics are included, while others are omitted.

> Looking at particular forms raises questions whether they are useful. The pleading forms in particular seem questionable. The pleading forms were obviously important in 1938. The adoption of notice pleading, a concept not easily expressed in words, required that the Committee paint pictures in the guise of Forms to illustrate the meaning of Rule 8(a)(2). That need has long since been served.

The December 2011 Report of the Advisory Committee states that the "benign neglect that has attended most of the Rule 84 forms may rest in part on their general obscurity," and that: "The Form 18 complaint for patent infringement has created particular difficulties for lower courts." Report at 13 (Dec. 2011). The report states that a proposed, "more detailed substitute," "echoes the common lament that the Form 18 model of a complaint for patent infringement is woefully inadequate." *Id.* at 38. It appears that the forms are under review.

Meanwhile, the district court herein held the complaint inadequate because it did not state facts adequate to show infringement. My colleagues reverse, and hold that direct infringement need not be pled with any more support than is set forth in Form 18. My colleagues hold that it was incorrect for the district court to "require a plaintiff to plead facts establishing that each element of an asserted claims is met," maj. op. at 16, and that "a plaintiff need not even identify which claims it asserts are being infringed." *Id.* My colleagues hold that in view of Form 18 the Court's rulings in *Twombly* and *Iqbal* on pleading requirements do not apply, and that Form 18 absolved the plaintiff of any obligation to inform the accused infringer of sufficient facts to permit meaningful response. My colleagues hold that the Court's remonstrances that pleading content should be viewed in the context of the asserted wrong, *Iqbal*, 556 U.S.

at 679, and other guidance, are not only irrelevant, but contrary to law, holding that Congress required dominance by the Rules, including the Forms, over refinements of judicial interpretation.

The panel majority quotes, in support of its position that complaints need not be heavy on detail, the Court's statement in *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011), that a complaint "generally requires only a plausible 'short plain' statement of the plaintiff's claim." However, *Skinner* did not elevate the Forms over judicial rulings. Plaintiff Skinner was a prisoner sentenced to death, who sought DNA testing in a §1983 proceeding; the Court held that the case was improperly dismissed on the pleadings. My colleagues also cite *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1323 (2011), a class action that turned on the materiality of asserted misrepresentations or omissions, where the Court held that the facts of the asserted misrepresentations and omissions as stated in the pleadings were sufficient to survive dismissal under Rule 12(b). These cases provide no support for the thesis that the pleading requirements established by the Supreme Court are overridden by Form 18.

Diverging from this insistence that a pleading of infringement requires no details, the panel majority holds that the claims presented by R+L Carriers are for indirect infringement, that is, induced and contributory infringement, and thus are immune from Form 18. My colleagues state that this form of infringement is indeed subject to *Twombly* and *Iqbal*, although recognizing that "a claim of indirect infringement can only arise where there is direct infringement and the district court concluded that no adequate claim of direct infringement had been pled." Maj. Op. at 8. The majority then evaluates the charges of direct and indirect infringement, in the same count of the complaint,

under entirely separate pleading standards. I have come upon no support for such a distinction.

## II

The complaints contain detailed information, each complaint over one hundred pages in length, describing the products offered and sold by each of the defendants for use in the trucking industry. The complaints provide the defendants with information as to the patents and specific claims that are allegedly being infringed, and identify the activities alleged to constitute infringement, direct and indirect. On applying the pleading standards of *Twombly* and *Iqbal*, I conclude that the pleading requirements of direct and indirect infringement are met. To this extent, I concur in the decision of the panel majority.